# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## TRIMBLE V. COVINGTON GROCERY COMPANY.

### November 16, 1911.

### Absent, Cardwell, J.

1. ATTACHMENTS—*Inchoate Lien—How Enforced— Procedure in Equity.*—Where an attachment at law has been sued out and levied, and a suit in chancery subsequently brought to subject assets of the debtor, it is improper to bring the attachment into the chancery suit and there take a decree for the debt, while the attachment stands merely upon the inchoate lien created by the levy of the attachment. The proper mode of procedure is to take judgment in the attachment case, and then to report the perfected lien in the chancery suit.

2. ATTACHMENTS—*Service—Evidence—Finding of Master.*—Where it is alleged in a bill in chancery that an attachment was served on a garnishee on a designated day, and, on reference to a master, he finds that it was served on that day, and no exception is taken to his report by the garnishee, who was a party defendant, and upon such finding, unexcepted to, the court bases its decree, it will be held to have been so served.

3. FRAUDULENT CONVEYANCES—*Avoidance—Code, Sections 2460 and 2460-a—Sale in Gross of Merchandise.*—Section 2460-a of the Code, relating to sales of merchandise in bulk creates no new right of action. If a cause of action exists that section atteaches certain consequences to the doing or omission to do certain things. It is by virtue of section 2460 that a creditor, before obtaining judgment or decree for his claim, may institute a suit to avoid a gift, conveyance, assignment or transfer of or charge upon the estate of his debtor.

4. SALES—*Sale in Gross of Merchandise—Who May Avoid—Creditor of Seller.*—In case of a sale in bulk of an entire stock of merchandise, which is forbidden by section 2460-a except upon the terms and conditions therein set forth, the suit to avoid the sale must be brought by the creditor of the seller—a credi-

tor existing at the date of the sale which is the subject of investigation.

5.   ATTACHMENTS—*Levy—Inchoate Lien—Relation—Lawful Transactions.*—The levy of an attachment creates an inchoate lien upon the property attached, and, when final judgment is rendered for the plaintiff, it relates back to the levy, but it cannot by relation render a transaction unlawful which was not unlawful at the time it took place.

6.   ATTACHMENTS—*Service on Garnishee—Effect—Right of Garnishee to Sell His Property—Code, Sections 2460 and 2460-a.*—The service of an attachment upon a garnishee creates a lien upon the debt which the garnishee owes to defendant in attachment, but nothing more. Such service, however, does not create the relation of debtor and creditor between such garnishee and the attaching creditor, within the meaning of sections 2460 and 2460-a of the Code, and does not confer upon such attaching creditor the right to avoid a sale in gross of merchandise by said garnishee for want of conformity to section 2460-a.

Appeal from a decree of the Circuit Court of Alleghany county.   Decree for the complainant.   Defendant appeals.

*Reversed.*

The opinion states the case.

*Geo. A. Revercomb* and *R. C. Stokes,* for appellant.

*C. B. Cushing,* for the appellee.

KEITH, P., delivered the opinion of the court.

Whitaker was engaged in the mercantile business in Covington, Va., and became indebted to various persons, including the Covington Grocery Company.   While so indebted he sold his stock of goods and fixtures in bulk to R. L. Rose. Rose took possession of the goods and conducted a mercantile business in the same building, purchasing from time to time other goods and adding to the stock purchased by him from Whitaker.   Rose upon purchasing the goods paid

to Whitaker $300 in cash and executed two promissory notes, one for $300 payable November 17, 1907, and the second for $359.62 payable on December 1, 1907. Whitaker deposited the cash in the Covington National Bank to his own credit and placed the notes with the bank for collection. Rose conducted the business for a short time, and then sold the entire stock of goods and fixtures purchased from Whittaker, together with such as he had purchased from time to time, in bulk to R. M. Trimble; this sale taking place on November 20, 1907. Trimble took possession under his purchase, and conducted the business in the same store building, adding small purchases from time to time. He became indebted to various creditors whom he was unable to pay, and on the 26th day of December, 1907, executed a deed of assignment conveying his stock of goods, fixtures and open accounts to Stokes and Revercomb, trustees, to be converted into money and the proceeds divided among all his creditors.

The Covington Grocery Company learning of the sale of Whitaker to Rose instituted an action of assumpsit against Whitaker in the Circuit Court of Alleghany county, setting up an account of $964.62, and Whitaker being a non-resident, an attachment issued out of the circuit court designating the Covington National Bank as being indebted to or having in its possession effects of the said defendant, Whitaker, and R. L. Rose as being also indebted to Whitaker. This attachment was sued out on the 9th of November, 1907, and a copy thereof was served on the Covington National Bank, and as appears from the record, as we shall hereafter endeavor to show, this attachment was also served upon Rose on the 11th day of November, 1907. On the 20th day of November, 1907, Rose sold the stock of merchandise in bulk to Trimble, as above stated.

At the December term, 1907, of the Circuit Court of Alleghany county, which convened on December 15, in the

attachment suit of the Covington Grocery Company against
Whitaker, and the Covington National Bank and Rose,
as garnishees, an order was entered which recites, that
the Covington National Bank has in its hands of the
effects of H. E. Whitaker the sum of $300 in cash, and that
it also holds for collection two negotiable notes due to Whita-
ker from Rose, and it further appearing from the statement
of Rose on oath that he is indebted to Whitaker in the
sum of $659.62 with interest on $300 part thereof from
November 17, 1907, and on $359.62 the remainder thereof
from December 1, 1907, until paid, as evidenced by the
negotiable notes mentioned, and that the entire fund in
the hands of the bank, including the two negotiable notes,
is the purchase price of a stock of goods purchased by him
of H. E. Whitaker, it is ordered that the Covington National
Bank pay to the clerk of the court the sum of $300 and turn
over to the said clerk of the court the two notes of R. L. Rose
above described, and upon so doing said Covington National
Bank shall be discharged from any further liability in these
cases, and the said R. L. Rose is ordered to pay the clerk of
this court the sum of $659.62 with interest on $300 part
thereof from November 17, 1907, till paid, and on $359.62
the remainder thereof from December 1, 1907, till paid,
and upon the payment of said amount with interest as afore-
said, the said clerk shall turn over to said R. L. Rose the
two above described notes duly cancelled, and the said R. L.
Rose shall be discharged from any further liability in these
cases.

On December 14, 1907, the Covington Grocery Company
filed its bill in chancery in the Circuit Court of Alleghany
county, in which it sets forth that in the sale from Rose
to Trimble referred to in the foregoing statement of facts,
he failed to take from Rose the proper affidavit and state-
ments required by section 2460-a of the Code of 1904; that
neither party to the sale gave the required notice of said sale

to any creditor of Rose; and that complainants received no such notice as the law contemplates, nor any notice whatever of the fact that such sale was contemplated until it had been fully completed. The complainants charge that owing to the failure of the parties to take the proper inventories and the proper affidavits, and to give the proper notices required by law, the sale by law is deemed to be a fraudulent one, and that it is void as to complainants, and that whatever goods were passed from Rose to Trimble are still liable for complainants' claims against Rose; and that they are also informed and believe that any goods belonging to Rose, who has conveyed away most if not all of his goods in fraud of his creditors, are liable to be attached for any debts owed by him; and that since said Trimble is deemed by the law to be a party to said fraud, any goods purchased from Rose by Trimble in said fraudulent transaction are liable to be so attached. Rose and Trimble were made parties defendant, answer under oath was waived, and the bill concludes with a prayer for the sale of the goods, the payment of complainants' debt, and for general relief.

The defendants answered the bill, evidence was taken, and the matter was referred to a commissioner, who reported in favor of the complainants; the report was confirmed, and the court entered a decree directing the fund under its control and the proceeds of the sale of the stock of goods purchased by Trimble from Rose to be turned over to the Covington Grocery Company, and from that decree Trimble has appealed.

It appears that the attachment at law of the Grocery Company against Whitaker was brought into the chancery suit before any judgment was rendered, when it stood merely upon an inchoate lien created by the levy of the attachment, and the circuit court proceeded to enter a decree for the debt. As what was done in this respect is not material to our conclusion, we mention it only to point out

the irregularity of the procedure, lest it should pass into precedent. The proper mode would have been to have taken judgment in the action of assumpsit and reported the perfected lien in the chancery suit.

·The crucial question in this case is at what moment did R. L. Rose become a debtor of the Grocery Company? There were no contractual relations between the Grocery Company and Rose. The Grocery Company was a creditor of Whitaker; Whitaker sold to Rose; the Grocery Company sued Whitaker, and he being a non-resident Rose was named as a debtor of Whitaker, and the attachment was served upon him. We say that it was served upon him, though counsel for appellant stoutly deny it. The service is charged in the bill. The cause was referred, as we have said, to a commissioner, and that commissioner reports that the attachment was served upon Rose on November 11, 1907. To that finding of fact no exception was taken, and upon that statement of fact unexcepted to the court rendered its decree. At the same term an order was entered directing the money and property attached to be brought into court, but it was not until the decree of February 1, 1910, that there was a complete adjudication of the rights and liabilities of the parties to this controversy.

The sale was made by Rose to Trimble on the 20th day of November, 1907. It is not averred that that sale was fraudulent otherwise than by failure to comply with the terms of section 2460-a of the Code. The whole case was proceeded with upon the theory that it turned upon that statute—upon the compliance or non-compliance with its terms.

That section creates no new right of action. It is by virtue of section 2460 that a creditor, before obtaining judgment or decree for his claim, may institute a suit to avoid a gift, conveyance, assignment or transfer of or charge upon the estate of his debtor. The effect of section

2460-a is to provide that, the cause of action existing, certain consequences shall be attributed to the doing or the omission to do certain things. In the case of a sale in bulk of an entire stock of merchandise, which is enjoined or forbidden by its terms, the suit must be brought by the creditor of the seller—a creditor existing at the date of the sale which is the subject of investigation.

In 1 Shinn on Attachments, sec. 313, it is said of a foreign attachment, that it creates "only an inchoate or qualified lien, which may become perfected by being merged into the judgment thereafter obtained in the suit, and it may be defeated by a dissolution of the attachment. The attaching creditor acquires no property, neither general nor special, in either realty or personalty by his attachment. The title remains in the debtor, not only until the attachment lien is merged into a judgment condemning the property, but until a sale is made thereof. The only right the plaintiff acquires under his attachment levy is to use such measures as may be necessary to preserve his security until he can reduce his demand to a judgment. He can not interfere with the claims of third persons. He has no right of possession and will have no right of action against one who takes the attached chattels from the possession of the attaching officer. While the attachment proceedings are pending, the officer controls the property and the plaintiff controls only the lien."

In Waples on Attachments (Edition of 1885), p. 580 *et seq.*, it is said: "By the law of relation, an attachment judgment retroacts to the time the property was first attached; to the time it was first subjected to garnishment; so that no incumbrances put upon it by its owner since that time can have higher rank than the attaching creditor's lien. Such retroaction makes the lien perfect from its first inception as though created by

the contract of the parties; as though it were a mortgage lien voluntarily put upon the property by the defendant himself. On the contrary, in case of final judgment for the defendant, there never has been any lien whatever; his subsequently created incumbrances, mortgages or voluntarily bestowed liens of any sort are perfectly good, and the plaintiff's claim has never been more than an ordinary one. . . . From the moment of service the lien is perfect—provided judgment recognizing the lien shall follow. From that moment the lien is nothing—provided no such judgment shall follow. The garnishee cannot know the future contingency. He is bound to hold the money, or goods, or indebtedness, subject to the order of court. . . . The plaintiff cannot enforce the lien till matured by judgment."

The inchoate lien upon the property attached, when final judgment is rendered upon it, relates back to the date of levy of the attachment; but it cannot by relation render a transaction unlawful which was not unlawful at the time it took place. The levy having been made on November 11, and the sale having been made on November 20, the subsequent course of procedure in the attachment suit which culminated in the final decree in 1910 cannot render fraudulent the sale from Rose to Trimble, if that sale were free from fraud at the time it was made. On the 20th of November, 1907, Rose was not the debtor of the Covington Grocery Company, unless that relation was established by operation of law as a result of the service of the process of attachment upon Rose on November 11. By that levy the Grocery Company acquired a lien, but nothing more.

In *Manhattan Fire Ins. Co.* v. *Weill* 28 Gratt. 389, a condition of a policy of insurance on a building was, "if the building insured stands upon leased ground, it must be so represented to the company, and so expressed in the written part of the policy; otherwise the policy shall be void." The

105

assured had given a deed of trust upon the building to secure a debt; and it was held, that this condition did not refer to the legal title, but to the interest of the assured in the property; and that the fact that he had given a deed of trust to secure a debt upon the property does not make the *cestui que trust* a joint owner.

The lien of the attaching creditor is likened to "a mortgage lien voluntarily put upon the property by the defendant himself." Waples on Attachments, p. 581.

It will not be contended that the beneficiary in a deed of trust which conveys choses in action to a trustee is such a creditor as before the execution of the trust would be entitled to sue under section 2460 to set aside a fraudulent conveyance made by the obligor in the choses in action covered by the deed, and yet the beneficiary under the deed has an interest identical in character with that of the attaching creditor. Section 2460-a, assuming that it is constitutional, may be regarded as remedial, and should be so construed as to advance the remedy, but the relation of debtor and creditor cannot be held to flow from the inchoate lien of an attachment such as appears in this case in order to accomplish that result.

We are of opinion that under the facts disclosed in this record Rose was not, on the 20th of November, 1907, a debtor to the Covington Grocery Company within the meaning and intendment of sections 2460 and 2460-a; that there was no obligation upon the part of Rose or of Trimble to comply with section 2460-a; and that for the reasons stated the decree of the circuit court was erroneous and must be reversed; and this cause will be remanded to the circuit court to be further proceeded with in accordance with this opinion.

*Reversed.*