# 𝔖𝔱𝔞𝔲𝔫𝔱𝔬𝔫

## K. A. O'Connor v. J. Wellford Smith, Trustee, etc.

September 8, 1948.

Record No. 3366.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan and Staples, JJ.

*William Old* and *J. M. Turner*, for the appellant.

*May, Simpkins, Young & Rudd*, for the appellee.

Staples, J., delivered the opinion of the court.

This suit was originally instituted by a petition for an attachment by J. Wellford Smith, Trustee in Bankruptcy for Dolly C. Smith. The attachment was issued and levied

upon certain equipment and fixtures which had been acquired by the defendant (appellant), K. A. O'Connor, from the bankrupt, Dolly C. Smith, by deed dated October 31, 1944. The equipment and fixtures had been employed by the bankrupt in the operation of a restaurant business owned by her. The ground of the attachment was that the property had been transferred to the defendant without compliance with and in violation of section 5187 of the Code, generally known as the Bulk Sales Act.

The same deed which transferred the said personal property to the defendant also conveyed to him a parcel of land situated in the City of Richmond, upon which was located the restaurant building in which the property levied on was located. On June 8, 1944, about four months prior to said conveyance, the bankrupt, Dolly C. Smith, had acquired the said real estate and most of the equipment and fixtures in question by deed from Carl P. Parrish, et als., for the consideration of $55,000, of which $50,000 was evidenced by purchase money notes and secured by two deeds of trust upon all the property, real and personal, which was embraced in the deed. The part of the debt secured by the second lien deed of trust was in the sum of $20,000. The bankrupt, Dolly C. Smith, operated a restaurant in the building for several months after she acquired it, but found she was unable to earn enough to pay the monthly notes secured by the second deed of trust. Having been threatened with foreclosure, she sold, conveyed, and transferred to the defendant, as above stated, the real estate, and all the fixtures and equipment used in her business. The defendant assumed the payment of the $50,000 debt. Shortly after his purchase, he paid the entire $20,000 secured by the second deed of trust.

Simultaneously with this sale by the bankrupt to the defendant, he, in turn, leased back to her the building, and the equipment and fixtures. She then continued to operate the restaurant there until February 1, 1945, when she sold out to one Terry D. Maxey. On the day of this sale to Maxey, the defendant also executed to him a similar lease. The

bankrupt disappeared about that time and has not been heard from since.

She was adjudicated an involuntary bankrupt April 9, 1945, and on May 4 the plaintiff, J. Wellford Smith, was appointed her trustee in bankruptcy. On May 11 he, as trustee, filed his petition for the attachment, the ground of which, as above stated, was that the transfer of the fixtures and equipment from the bankrupt to the defendant by the said deed of October 31, 1944, was in violation of section 5187 of the Code.

After the filing and disposition of demurrers and the consequent amendment of the pleadings, several months later an order was entered transferring the cause to the equity side of the court and referring it to a Commissioner in Chancery to make inquiries and reports as to certain matters deemed pertinent.

One of the questions referred to the Commissioner was whether section 5187 of the Code, the Bulk Sales Act, was applicable to the restaurant business which had been conducted by the bankrupt prior to her sale of the fixtures and equipment to the defendant on October 31, 1944. The Commissioner reported that said section was applicable and had not been complied with. He also reported a statement of debts contracted by the bankrupt prior to her said sale of the property to defendant amounting to $6,313.48 as constituting a lien in favor of the plaintiff on the property levied on.

On July 9, 1947, the decree here appealed from was entered. It confirmed the report of the Commissioner and rendered a personal judgment in favor of the plaintiff, J. Wellford Smith, Trustee, against the defendant, K. A. O'Connor, for the said sum of $6,313.48. To review that decree this appeal was awarded.

The main question raised in the case, and the only one which we find it necessary to decide, is whether section 5187 of the Code is applicable to the sale of the fixtures and equipment by the bankrupt to the defendant.

The purpose of the Code section is thus expressed in its

caption: "To prevent persons *engaged in buying and selling merchandise,* while indebted, from selling their entire *stock of merchandise* in bulk, or selling the major portion thereof, otherwise than in the ordinary course of trade." (Italics ours). Fixtures are not embraced in this statement of its purpose but are included in the prohibition contained in the body of the statute against the sale in bulk "of any part or the whole of a stock of merchandise, or the fixtures pertaining to the conduct of said business, otherwise than in the ordinary course of trade" without complying with the conditions prescribed in the Act. It is admitted that neither the bankrupt nor the defendant made any effort to comply with the Act.

The Virginia Bulk Sales statute conforms closely to the general pattern of similar Acts which have been adopted in most of the States. The question of the applicability of its provisions to the restaurant business we have not heretofore been called upon to consider. However, the great weight of authority in other States supports the view that such statutes *are restricted to persons who are engaged in the purchase and sale of merchandise.* The general rule is thus stated in 37 C. J. S., section 479, at pages 1330 and 1331:

"In general, bulk sales laws apply to sales of any stock of goods, wares, or merchandise in bulk by a merchant, trader, or dealer having a fixed place of business; and in most instances *they are limited to such persons,* * * * . Unless they carry what may be designated as *a stock of merchandise,* particular statutes have been held not to apply to sales by manufacturers, including the seller of a manufacturing plant which sells its product merely as an incident to the business; retailers not selling goods bought for resale but only goods produced or manufactured by themselves; bakeries; pea canneries; farmers; persons engaged in the logging and lumbering business; shoemakers; *hotel keepers; restaurant keepers; proprietors of lunch wagons; proprietors of boarding house businesses;* * * * ." (Italics ours).

The decisions of the courts of the various States on

this question have been assembled in a comprehensive annotation in 168 A. L. R., pages 738-752, inclusive. The overwhelming majority of the cases are shown there to be in accord that a restaurant business is not one involving *the carrying of a stock of merchandise or the buying and selling of merchandise.*

The language of the Virginia Act requires a construction in conformity with these conclusions. It expressly applies only to "persons engaged in buying and selling merchandise," and refers to the "entire *stock* of merchandise." A restaurant business is of an essentially different type. It is more closely related to dining rooms of hotels, boarding houses, hospitals, and educational institutions. The principal investment of the owner of a restaurant consists of his equipment for cooking, preparing, storing and preserving foods, such as stoves and grills, pots and pans, refrigerators and store rooms. There must be included also, of course, the china, silverware, linen, tables and chairs which are necessary for serving meals to the patrons.

The general rule, independent of statute, is that a deed of trust on a shifting stock of merchandise, where the merchant is left in possession with power of sale, is *prima facie* fraudulent and void. *Boice* v. *Finance, etc., Corp.*, 127 Va. 563, 569, 102 S. E. 591, 10 A. L. R. 654, and cases cited. This is not true, however, of equipment and fixtures pertaining to a merchandise business, but which are not intended to be sold in the usual course of trade. It would be a severe restriction upon the owner of a hotel, restaurant, or boarding house, to prohibit him from giving a lien on the main asset of his business, which consists of his permanent equipment and fixtures, if he finds it necessary or expedient to finance its expansion.[1]

Furthermore, when a proprietor of a restaurant serves a meal to his guest it does not constitute a *sale* of food

---

[1] The defendant here claims that section 5187 cannot be properly construed as applying to a sale or encumbrance of fixtures alone, even in the case of merchants. We do not find it necessary, however, to express an opinion on this question.

or merchandise in contemplation of law. In 46 Am. Jur., Sales, section 13, page 207, the rule is thus stated:

"Although there is some authority to the contrary, the great weight of authority supports the view that the common transaction between an innkeeper or a restaurant keeper and his customer under which the latter is furnished with food to consume on the premises is not a sale, either at common law or under the Uniform Sales Act. The essence of it is not an agreement for the transfer of the general property of the food or drink placed at the command of the customer for the satisfaction of his desires, or actually appropriated by him in the process of appeasing his appetite or thirst. The customer does not become the owner of the food set before him, or of that portion which is carved for his use, or of that which finds a place on his plate or in side dishes set about it. No designated portion becomes his. He is privileged to eat, and that is all. The uneaten food is not his. He cannot do what he pleases with it. That which is set before him or placed at his command is provided to enable him to satisfy his immediate wants, and for no other purpose. He may satisfy those wants; but there he must stop. He may not turn over unconsumed portions to others at his pleasure, or carry away such portions. The true essence of the transaction is service in the satisfaction of a human need or desire—ministry to a bodily want. A necessary incident of this service or ministry is the consumption of the food required. This consumption involves destruction, and nothing remains of what is consumed to which the right of property can be said to attach. Before consumption, title does not pass; after consumption, there remains nothing to become the subject of title. What the customer pays for is a right to satisfy his appetite by the process of destruction. What he thus pays for includes more than the price of the food as such. It includes all that enters into the conception of service, and with it no small factor of direct personal service. It does not contemplate the transfer of the general property in the food supplied as a factor in the service rendered."

█ The fixtures referred to in the Virginia Bulk Sales Act (section 5187) are those "pertaining to the conduct of said business" of "buying and selling merchandise." Clearly, they do not include those fixtures which pertain only to the preparation, cooking, and serving of meals to the guests of a restaurant.

The plaintiff claims that the bankrupt made a practice of packing up chicken lunches in boxes and selling them for off-premise consumption. The evidence does not indicate any substantial amount of such type of business, or, in fact, that any of it was carried on prior to October 31, 1944, the time of her sale of the property to the defendant. Nor does it appear that any of the fixtures or equipment here involved "pertained to the conduct" of such incidental transactions.

█ Plaintiff argues that the Act is intended to protect business from perpetration of frauds and should be liberally construed. But it is also true that, if applied to equipment and fixtures, it deprives their owner of utilizing them as a specific basis of credit. It likewise would render it difficult to effect a trade in of old fixtures for new or improved ones. The authorities have generally taken the view (although there are some exceptions) that such statutes impose a restriction on the liberty of a person to sell or encumber his property for legitimate purposes, are in derogation of this common law right, and should not be extended beyond the clear scope of the language of the Act. Their constitutionality as an exercise of the State's police power, in the earlier days of the history of these statutes, was often denied by the courts, and in some States this view is still adhered to. The great majority of the decisions hold that the Bulk Sales Acts should be strictly construed. 24 Am. Jur., Fraudulent Conveyances, sections 238, 240, and cases cited; 37 C. J. S., same title, sections 472, 474, and cases cited.

In support of its argument for a liberal construction, the plaintiff quotes the following expression in the opinion of

Judge Keith in *Trimble* v. *Covington Groc. Co.*, 112 Va. 826, 834, 72 S. E. 724:

"Section 2460-a," (now 5187) "assuming that it is constitutional, may be regarded as remedial, and should be so construed as to advance the remedy, * * *."

In that case, however, the statute was held not to be applicable under any interpretation. The question of its liberal or strict construction was not involved, and, therefore, not decided. Nor do we think the language quoted from the opinion purports to express an opinion on the question.

In Virginia the well-settled rule of construction is that even though a statute be remedial, when, at the same time, it is also in derogation of common law, it must be strictly construed. In *Hannabass* v. *Ryan*, 164 Va. 519, 525, 180 S. E. 416, Mr. Justice Gregory said this:

"We must bear in mind that this section of the statute, while remedial, is in derogation of the common law and therefore must be strictly construed.

\* \* \* \* \* \*

"It must be presumed that the legislature acted with full knowledge of the strict interpretation that must be placed upon a statute of this nature. The common law is not to be considered as altered or changed by statute unless the legislative intent be plainly manifested." (Citing authorities).

The Bulk Sales Act here involved not only restricts the common law right of an owner of the personal property affected by it to sell and transfer title to the purchaser, but as construed by the court below it also imposes upon the purchaser, under the circumstances of this case, a liability to creditors of the seller to the extent of value of the property he acquired. No such liability existed at common law in the absence of actual fraud. In the *Hannabass Case, supra,* the opinion continues:

"In construing section 282e of the Highway Law of the State of New York (Consol. Laws N. Y., chapter 25), which imposes liability upon the owner of a motor vehicle for negligence in its operation by any person with the permission of the owner, the court in the case of *Atwater* v.

*Lober,* 133 Misc. 652, 233 N. Y. S. 309, 314, said 'Section 282e, though remedial, must be followed with strictness. *If a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed.'* "   (Italics ours).

In *Combined Saw, etc., Co.* v. *Flournoy,* 88 Va. 1029, 1034, 14 S. E. 976, it was said that "statutes which impose restrictions upon trade or common occupation, or which levy an excise or tax upon them, must be construed strictly."

We conclude with respect to this statute that, in view of its curtailment of the established common law rights of an owner of property to sell or encumber it, and of the imposition of a liability upon the purchaser of such property under certain circumstances, its provisions should not be extended, by implication, to embrace transactions not clearly within the scope of the language employed.   The sale involved here cannot be said to come clearly within that scope.

Since a recovery by the plaintiff cannot be supported by the facts proven in this case, it is unnecessary to consider the other questions raised and ably discussed by counsel for the respective parties.

The decree appealed from is reversed and a final decree wil be entered in this court dismissing the attachment and complaint.

*Reversed and dismissed.*