# Richmond

RICHARD LEVY, AN INFANT, ETC. V. STANLEY PAUL, T/A ETC.

April 25, 1966.

Record No. 6158.

Present, Eggleston, C. J., and Buchanan, Snead, I'Anson, Carrico and Gordon, JJ.

*Alvin B. Fox* (*Louis Ellenson; Ellenson and Fox*, on brief), for the plaintiff in error.

*Granger West* (*Ford, West and Wilkinson*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

The question for decision here, of first impression in Virginia, is: Does a restaurant-keeper impliedly warrant the wholesomeness of the food he serves to his patrons?

The plaintiff, Richard Levy, an infant three years of age, suing by Betty Levy, his mother and next friend, filed a motion for judgment against the defendant, Stanley Paul, trading as National Restaurant, seeking to recover damages in the sum of $25,000.00.

The motion alleged that on August 11, 1963, the plaintiff entered the restaurant operated by the defendant in Newport News and ordered and consumed a meal; that the defendant impliedly warranted that the food was wholesome; that the food so consumed was not wholesome, and that the plaintiff, as the result of consuming the food, became ill from food poisoning.

The defendant filed a demurrer to the motion for judgment "as not being sufficient in law."

The court heard argument on the demurrer and sustained it. To the final order dismissing his motion for judgment, the plaintiff was granted this writ of error.

As has been indicated, the question as to whether an implied warranty of wholesomeness attaches in the transaction between a restaurant-keeper and a patron has not been previously decided by this court. The question was expressly left open for decision in *Colonna v. Rosedale Dairy Co.*, 166 Va. 314, 186 S. E. 94, where it was held that an implied warranty of wholesomeness applied to the sale of milk by a dealer to a householder.

The question has been the subject of much judicial controversy throughout the country. From a review of the authorities, it may be safely said that the decided weight is in favor of holding that an implied warranty of wholesomeness does attach to the restaurateur-patron relationship. Annotation, Implied Warranty of Fitness by One Serving Food, 7 A.L.R. 2d 1027, at p. 1029; 22 Am. Jur., Food, 1965 Cumulative Supplement, § 101, p. 108; 1 Frumer and Friedman, Products Liability, § 24.01, p. 641; Note, The Implied

Warranty of Merchantability, 48 Va. Law Review 152, at pp. 161-162.

The focal point of the controversy has been whether the transaction should be designated a sale or merely the rendering of a service. The majority view, or the "Massachusetts-New York Rule" as it is called because it originated in those states, classifies the transaction as a sale or, at least, a qualified sale, to which the warranty attaches. Under the minority view, or the "Connecticut-New Jersey Rule," the transaction is held not to be a sale but is curiously labeled "the uttering of food," to which no warranty attaches.

In 1 Williston on Sales, Rev. Ed. 1948, § 242 b, p. 639, at pp. 640-641, something of the middle ground is contended for. There it is urged:

"Even though the transaction is not a sale, every argument for implying a warranty in the sale of food is applicable with even greater force to the serving of food to a guest or customer at an inn or restaurant. The basis of implied warranty is justifiable reliance on the judgment or skill of the warrantor. . . . A sale is not the only transaction in which a warranty may be implied. . . ."

Thus, we are confronted with three choices:

(1) To hold the transaction to be a sale, implying a warranty of wholesomeness of the food furnished to the patron and holding the restaurant-keeper liable for consequential damages resulting from a breach of the warranty;

(2) To imply the warranty, as would Williston, from the relationship of the parties because of the reliance by the patron upon the judgment and skill of the restaurant operator; or

(3) To hold the transaction to be "the uttering of food," to which no warranty attaches, leaving the injured patron to the almost impossible task of proving negligence on the part of the restaurant-keeper or his agents.

The choice, in our opinion, is clear. We believe that the conclusions of those courts which hold the transaction to be a sale are based upon better and sounder reasoning, reflecting a more logical approach to the realities of a simple, everyday relationship.

But, the defendant contends, we are not free to make that choice. He says that we have already decided that the furnishing of food by a restaurant-keeper to a patron is not a sale, and directs our attention to the case of *O'Connor* v. *Smith*, 188 Va. 214, 49 S. E. 2d 310.

In that case, the trustee of a bankrupt restaurant owner caused an

attachment to be levied upon the equipment and fixtures which had been previously employed in the operation of the restaurant. The equipment and fixtures had been purchased by and conveyed to the defendant by the restaurant owner without complying with the Bulk Sales Act (Code, § 55-83), a fact which, the trustee alleged, rendered the sale void as to creditors.

The opinion states that "The main question raised in the case, and the only one which we find it necessary to decide, is whether [the Bulk Sales Act] is applicable to the sale of the fixtures and equipment by the bankrupt to the defendant."

It was noted that the Bulk Sales Act, by its terms, was limited to " 'persons engaged in buying and selling merchandise,' and refers to the 'entire *stock* of merchandise.' " It was stated that "a restaurant business is not one involving *the carrying of a stock of merchandise or the buying and selling of merchandise.*" It was held that the equipment and fixtures of the restaurant did not pertain " 'to the conduct of said business' of 'buying and selling merchandise,' " and thus were not subject to the provisions of the Bulk Sales Act.[1]

Having made that determination, which fully decided the only question involved in the case, the writer continued by stating, "Furthermore, when a proprietor of a restaurant serves a meal to his guest it does not constitute a *sale* of food or merchandise in contemplation of law." 188 Va., at pp. 219-220.

We abide by the holding in the *O'Connor* case that the equipment and fixtures of a restaurant do not pertain to the business of buying and selling merchandise within the contemplation of the Bulk Sales Act. But the fact that a restaurant operator may not be engaged in the business of buying and selling merchandise, under the strict terms of that Act, does not mean that he is not in the business of preparing and selling food and drink in contemplation of the law of implied warranty.

We do not consider as binding upon us the statement in the *O'Connor* case that "when a proprietor of a restaurant serves a meal to his guest it does not constitute a *sale* of food or merchandise in contemplation of law." The nature of the transaction between a restaurateur and a patron was in no way involved in the dispute

---

[1] The Bulk Sales Act was repealed by the Uniform Commercial Code, effective January 1, 1966, and replaced by Uniform Code—Bulk Transfers, Code §§ 8.6-101 to 8.6-111. Point 2 of the Official Comment states that the businesses covered do not include restaurants. The Virginia Comment states that this is in accord with *O'Connor* v. *Smith, supra.*

which was the subject matter of the case. The only question involved was as to the applicability of the Bulk Sales Act—a question which could not permit a determination as to whether there is an implied warranty in the serving of food in a restaurant. The statement was unnecessary to a decision of the case and was, therefore, mere dictum. To the extent that the statement has any possible effect upon the question involved here, it is expressly rejected.

■ That the transaction between a restaurateur and a patron constitutes a sale finds support in several enactments of our legislature.

For example, Code, §§ 3-285 to 3-305 set forth the sanitary requirements "for the preparation for sale, manufacture, packing, storage, sale or distribution of any food or food products" by restaurants and other food-handling establishments. Code, § 3-303 makes it unlawful "to sell or to offer or expose for sale for human food any article which has been prepared, handled or kept where the sanitary conditions are such that the article is rendered unhealthy, unwholesome, deleterious, or otherwise unfit for human food."

It would be an odd anomaly if a restaurant operator could be found guilty of a criminal offense for selling unfit food, prepared under unsanitary conditions, but could escape civil liability for serving the same food through the legal fiction that the transaction did not, after all, constitute a sale.

Again, Code, § 4-25, a part of the Alcoholic Beverage Control Act, expressly authorizes the issuance of "retail on-premises wine and beer licenses to . . . restaurants, which licenses shall authorize the licensees to sell wine and beer in the dining rooms thereof" or "retail on-premises beer licenses to . . . restaurants, which licenses shall authorize the licensees to sell beer in dining rooms thereof."

It would take a specious bit of logic to conclude that when a customer orders a ham sandwich and a glass of beer in a restaurant that the beer is sold to him but that the sandwich, served and paid for at the same time, is not so sold.

The holding that the transaction between a restaurant-keeper and his patron is a sale, carrying an implied warranty of wholesomeness of the food served, is required to maintain consistency with our other decisions relating to foodstuffs. From *Colonna* v. *Rosedale Dairy Co.*, *supra*, through *Swift and Company* v. *Wells*, 201 Va. 213, 110 S. E. 2d 203, down to *Brockett* v. *Harrell Bros., Inc.*, 206 Va. 457, 143 S. E. 2d 897, we have consistently held that there is an implied warranty of wholesomeness imposed upon those who manufacture or sell foodstuffs.

The purpose of such a warranty, as stated in the *Brockett* case, is "to require a person who sells or purveys articles of food to insure their being wholesome and fit for human consumption." 206 Va., at p. 461.

Such a purpose arises out of an even greater necessity in the case of food served in a restaurant. As we said in *Cushing* v. *Rodman*, 82 F. 2d 864, 868-869:

". . . The customer does in fact rely upon a dispenser of food for more than the use of due care. He depends upon the experience and trade wisdom of the dispenser in selecting the articles or ingredients of the food, and upon his skill in the preparation and service thereof. The customer has no effective opportunity to inspect or select so far as wholesomeness is concerned. . . ."

To hold that no implied warranty is applicable here would create a strange inconsistency in the law. In such a situation, a customer who is made ill from eating an unwholesome ham could recover from the corner supermarket where he purchased the ham. But if, instead, that same person becomes ill from eating a sandwich prepared with the same ham at the next-door restaurant, he would be denied recovery against the restaurateur.

The reasoning which would arrive at such a conclusion smacks of a lack of a sense of reality. Such reasoning stems from the old-fashioned notion that the patron acquired no title to or property in the food placed before him in an eating place. When a patron orders and pays for a meal in a restaurant, whose food is it if not his? Does it still belong to the restaurateur, who is free to retrieve it at will if not yet eaten?

These questions answer themselves. As was said in *Betehia* v. *Cape Code Corporation*, 10 Wis. 2d 323, 103 N. W. 2d 64, 66, "Today if one takes home from a restaurant part of his steak for his dog, he could hardly be accused of larceny."

Sound considerations of public policy demand that we avoid the inconsistencies which would naturally arise from a holding that the restaurateur-patron relationship does not involve a sale carrying an implied warranty. We answer that demand by holding that the furnishing of food by a restaurant-keeper to a patron is a sale and does carry an implied warranty that the food is wholesome and fit for human consumption, for the breach of which the restaurant-keeper is liable for consequential damages.

We ought not to make that ruling, however, argues the defendant, because so to do would give retroactive effect to the Uni-

form Commercial Code, effective in this state as of January 1, 1966, which was intended by the legislature to have only prospective effect. The defendant points out that the injury to the plaintiff occurred before the Uniform Commercial Code became effective.

Section 8.2-314 of the Uniform Commercial Code provides that "the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale" in which there is implied "a warranty that the goods shall be merchantable . . . if the seller is a merchant with respect to goods of that kind."

We do not consider that our decision gives retroactive effect to the Uniform Commercial Code. The point here presented and decided has, up until this time, been an open question in Virginia. To decide it now is merely to give present effect to a right which, though here only newly announced, has been but dormant in our law.

Consonant with the views herein expressed, we hold that it was error for the trial court to sustain the defendant's demurrer and to dismiss the plaintiff's motion for judgment. Accordingly, the final order of the trial court will be reversed, the motion for judgment will be reinstated and the case will be remanded for further proceedings.

*Reversed and remanded.*

GORDON, J., concurs in result.