## CIRCUIT COURT OF LOUDOUN COUNTY

Dulles Mutual Benefit Ass'n et al.

v.

Air Transit, Inc.

Case No. (Law) 9956

By JUDGE JAMES H. CHAMBLIN

October 21, 1988

This action has been brought by Dulles Mutual Benefit Association ("DMBA") and four individual plaintiffs against Air Transit, Incorporated ("Air Transit") for declaratory relief and money damages. The individual plaintiffs seek damages for an unlawful cancellation of a franchise under the Virginia Retail Franchising Act (Sections 13.1-557 et seq. of the Code of Virginia) and wrongful discharge, while DMBA seeks a declaratory judgment that certain taxicab owner/operator agreements made with Air Transit constitute franchises under the aforesaid Act. Air Transit has filed two demurrers, but only one of which has been argued and is the subject of this opinion letter.

Air Transit has filed a demurrer to DMBA's declaratory judgment prayer alleging that DMBA has no standing to assert the cause of action and that a declaratory judgment proceeding does not lie as to the claims asserted by DMBA.

After consideration of oral argument on October 7, 1988, and the memoranda submitted by counsel, the demurrer is sustained for the reasons hereinafter set forth.

The civil remedies provided in the Virginia Retail Franchising Act are specifically granted to a franchisee in Section 13.1-571. There is no provision granting such remedies to a group of franchisees such as the 1981 amendment to the Virginia Condominium Act, which granted unit owner associations the power to act as attorney-in-fact for the individual unit owners in asserting or defending certain actions. This amendment was passed to avoid the impact on condominium unit owner associations of the general rule as set forth in *Chesapeake House v. National Bank*, 231 Va. 440 (1986), that such associations do not have the standing to institute an action on behalf of its members. There are no allegations in the Motion for Judgment that the individual plaintiffs and/or the other taxicab owner/operators at Dulles Airport have designated DMBA as their attorney-in-fact to bring this suit or have otherwise legally authorized DMBA to do so.

There are no allegations in the Motion for Judgment of privity of contract between DMBA and Air ·Transit or that Air Transit owed any duty to DMBA. The only contracts alleged are between the taxicab owner/operators and Air Transit. The plaintiffs challenge the agreements, but there are no allegations that DMBA is in privity of contract by assignment, third party beneficiary, or any other theory.

Even though DMBA does not have standing to bring a declaratory judgment action under Sections 8.01-184 et seq. to determine whether or not the owner-operator agreements constitute franchises under the Virginia Retail Franchising Act, I feel I must address the question of whether such issue is the appropriate subject of a declaratory judgment proceeding because the individual owner/operators may consider bringing such an action. They cannot be substituted as parties plaintiff. *See Chesapeake House v. National Bank*, 231 Va. 440 (1986).

I am of the opinion that seeking a judicial determination of the legal status of the owner/operators agreements is not the proper subject of a declaratory judgment proceeding. There must be an actual controversy and an actual antagonistic assertion and denial of right under Section 8.01-184. There must be specific claims based on present

facts ripe for adjudication and cannot be based on speculation of what might occur. *City of Fairfax v. Shanklin*, 205 Va. 227 (1964). The Court cannot be called upon to render an advisory opinion. *Liberty Mutual Ins. Co. v. Bishop*, 211 Va. 414 (1970); *Chick v. McBain*, 157 Va. 60 (1931). There are no allegations in the Motion for Judgment that all of the owner/operator agreements are exactly the same and that the circumstances surrounding the execution and performance of each are exactly the same. It would be contrary to judicial economy to require the Court to examine such factors as to each owner/operator.

For a plaintiff to recover under the civil remedies provisions of the Virginia Retail Franchising Act, he must prove that his individual case falls within the Act. It is an element of his cause of action. Each case will rise or fall on its own particular facts, and all cases may not have common facts. *See Williams v. Southern Bank*, 203 Va. 657 (1962). Even if this Court were to take jurisdiction and decide that, given the facts as presented in evidence, the owner/operator agreements constituted franchises, I can conceive of Air Transit in every case brought for damages asking the Court to rule it was not a franchise because the facts of the case differed from those in the declaratory judgment proceeding. Even if this Court ruled otherwise in the declaratory judgment proceeding, I can easily conceive of owner/operators bringing suit claiming that the facts in their cases were different. I feel that DMBA is asking the Court to render an advisory opinion on the franchise issue based solely on the evidence it would choose to produce at trial with potentially no *res judicata* or collateral estoppel effect.

I agree with the late Judge Warriner in *Picture Lake Campground v. Holiday Inns*, 497 F. Supp. 858 (E.D. Va. 1980), that the public policy of Virginia as expressed in the Retail Franchising Act to correct inequities in the franchising system is to be achieved primarily by the procedures of the State Corporation Commission and by criminal sanctions. Under *Liberty Mutual*, 211 Va. at 421, the Court must consider if some other mode of proceeding is provided. Such administrative or criminal proceedings would provide a faster resolution of the franchise issue than a declaratory judgment proceeding in this Court.

This Court can decide the franchise question in the actions asserted by the individual plaintiffs herein. Their causes of action and rights are fixed, and, thus, preferably are susceptible of resolution by traditional litigation. *See American National Bank and Trust v. Kushner,* 162 Va. 378 (1934). As to the other owner/operators, I feel it is speculative that their agreements will ever be cancelled by Air Transit, and, even if cancelled, under what circumstances.

Let Mr. Lawson prepare an order sustaining the demurrer to the declaratory judgment count of the Motion for Judgment as asserted by DMBA with leave to it to file an amended Motion for Judgment for a declaratory judgment on or before November 11, 1988, if it be so advised. If such an amended Motion for Judgment is so timely filed, then Air Transit will have fourteen days after filing to file its responsive pleadings thereto. If an amended Motion for Judgment is not so timely filed, then the count of the Motion for Judgment asking for a declaratory judgment will be dismissed with prejudice.

November 22, 1988

This opinion letter addresses the second demurrer filed by Air Transit, Incorporated ("Air Transit") directed toward the relief sought by the four individual plaintiffs herein. For a description of the nature of this litigation, see the first paragraph of my opinion letter dated October 21, 1988, setting forth the ruling on the demurrer to the relief requested by Dulles Mutual Benefit Association ("DMBA").

In this second demurrer, Air Transit alleges that the motion for judgment does not, for various reasons, state a claim for relief under the Virginia Retail Franchising Act (Sections 13.1-557 et seq. of the Code of Virginia) and does not state a recognizable claim for relief for a wrongful termination of the alleged agreement between the four individual plaintiffs and Air Transit.

After consideration of the memoranda of counsel and oral argument on November 9, 1988, the aforesaid demurrer is sustained for the reasons hereinafter set forth.

I. *Alleged Unlawful Cancellation of Franchise under the Virginia Retail Franchising Act (Count I)*

On a demurrer the Court must accept as true all facts expressly alleged in the motion for judgment and all facts which may be reasonably inferred from the facts pled. *Duggin, Trustee, v. Adams,* 234 Va. 221 (1987); *Ryland Group, Inc. v. Wills,* 229 Va. 459 (1985); *Penick v. Dekker,* 228 Va. 161 (1984). However, a demurrer does not admit the validity of any conclusion of law contained in the motion for judgment unless it is supported by the facts pled or reasonably inferred. *See Motors Insurance Corporation v. United States Fire Insurance Company,* 208 Va. 684 (1968); *Arlington Yellow Cab Company v. Transportation, Inc.,* 207 Va. 313 (1966); *Caplan v. Stant,* 207 Va. 933 (1966); *Hoffman v. First National Bank,* 205 Va. 232 (1964).

It is clear from the motion for judgment that the agreement between each individual plaintiff and Air Transit has been reduced to writing. *See* paragraphs 10 and 11 of the motion for judgment. The plaintiffs have not made a copy of each agreement a part of the motion for judgment. Instead, the plaintiffs have alleged in paragraph 12 of the motion for judgment what the agreements grant each plaintiff and the marketing plan or system under which each plaintiff has been granted the right to operate a taxicab at Dulles Airport.

If a contract is clear and unambiguous, then it is for the Court to interpret the contract, not the trier of fact. *See Winn v. Aleta Construction Co.,* 227 Va. 304 (1984); 4B Michie's Jurisprudence, *Contracts,* Section 53. There are no allegations in the motion for judgment that the agreements are ambiguous so as to allow the trier of fact to receive parol evidence in order to interpret the agreement. I am of the opinion that the interpretation of an unambiguous contract requires a Court to make conclusions of law, and not conclusions of fact. I feel this way because, if for no other reason, an appellate court in Virginia is not bound by the trial court's interpretation of a contract. *See, e.g., Wilson v. Holyfield,* 227 Va. 184 (1984).

I feel that a motion for judgment containing conclusions of law can survive a demurrer if facts are alleged to support them. As to a written contract, the facts sup-

porting the interpretation of such a contract (conclusions of law) are the actual words of the contract. Here the plaintiffs have not alleged the actual words of the subject agreements. The allegations of paragraph 12 are mere conclusions of law without facts to support them.

The parties have cited the case of *Ames v. American National Bank*, 163 Va. 1 (1934), for their respective positions. I do not feel that *Ames* is contrary to the general rule set forth above. The plaintiffs have misplaced their reliance on *Ames* as authority for the proposition that the interpretation of a contract is an allegation of fact. *Ames*, 163 Va. at 49, merely provides that such an allegation is well pleaded if, as a matter of law, the subject contract could not be interpreted otherwise. Without having the actual written agreements to review, this Court cannot accept as true on demurrer the plaintiffs' allegations of the effect of the agreements.

I have always felt that, even if it might not be required, a good pleader will always plead his written agreement if it is the basis of his claim. It tells the defendant exactly what is the basis of the claim and allows the defendant to demur if the claim does not flow from the agreement. With the adoption of Virginia Code Section 8.01-271.1, it is all the more necessary to have a sufficient basis in fact for the allegations.

Because the specifics of agreements are not alleged, the demurrer must be sustained.

For the same reason, the demurrer must be sustained on the other grounds alleged by Air Transit. Without the specifics of the agreement, the allegations that Air Transit is a "franchisor," that the "Washington Flyer" logo is substantially associated with the plaintiffs' business, and that the plaintiffs are required to maintain a place of business in Virginia are all conclusions of law not supported by the factual allegations of the motion for judgment. Further, the plaintiffs cannot obtain punitive damages for breach of contract.

For the foregoing reasons, the demurrer is sustained as to Count I of the Motion for Judgment.

## II. *Alleged Unlawful Discharge-Tort (Count II)*

As to Count II of the motion for judgment, the individual plaintiffs argue that they have stated a cause of action in tort for wrongful termination of the agreements based on *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985). In *Bowman* the Virginia Supreme Court created a very narrow exception to the general rule that an employee at will can be discharged without cause by his employer. Under *Bowman* an employee discharged in violation of an established public policy has a cause of action in tort for such wrongful discharge. *Bowman*, 229 Va. at 540 (1985).

I am of the opinion that the motion for judgment does not allege sufficient facts to state a cause of action under *Bowman*. I feel that *Bowman* applies only to an employer-employee relationship. The plaintiffs argue that the allegations of paragraph 12 of the motion for judgment support an alleged employer-employee relationship. In Count I the plaintiffs assert that the allegations of that same paragraph show a franchise, and that in Count II they show an employer-employee relationship. Considering the factors needed to show an employer-employee relationship as set out in *Craig v. Doyle*, 179 Va. 526 (1942), and the definition of "franchise" in Section 13.1-559(b), I do not feel that a franchisee can be an employee of the franchisor/employer unless the written agreement specifically provides for such an arrangement. The specifics of the agreements are not alleged. Therefore, there are no facts alleged to support an employer-employee relationship between the individual plaintiffs and Air Transit, and, accordingly, *Bowman* does not apply. Further, this Court will not extend the "narrow exception" of *Bowman* beyond the precise limits set in the case by the Virginia Supreme Court. The *Bowman* exception will not be extended to apply to a franchisee or an independent contractor.

Even assuming that *Bowman* does apply to the relationship between the plaintiffs and Air Transit, I do not feel that the plaintiffs have alleged a discharge or termination in violation of any established public policy. I construe *Bowman* to mean that an at-will employee has this narrow cause of action only when he is discharged in retaliation for actions allowed by statute and in furtherance of some public policy. There is no allegation

that the plaintiffs' agreements were terminated in retaliation for their assertion of rights under the Virginia Retail Franchising Act. While there is an allegation that the agreements were terminated because of the plaintiffs' exercise of their constitutional rights of assembly and free speech, I do not feel that this is a violation of public policy. It may be public policy for the state not to interfere with or abridge a person's rights of assembly and free speech, but I do not feel that it is public policy to prevent a private individual from interfering with or abridging a person's rights. Private individuals contract away such rights every day.

The demurrer to the claim for punitive damages is sustained because of the failure of the plaintiffs to allege a cause of action in tort. For this and the other reasons set forth above, the demurrer to Count II of the motion for judgment is sustained.

Let Mr. Lawson prepare an order sustaining the demurrer to Counts I and II of the motion for judgment with leave to the individual plaintiffs to file an amended motion for judgment as to Counts I and II on or before December 13, 1988, if they be so advised. If such an amended motion for judgment be timely filed, then Air Transit will have fourteen days after filing to file its responsive pleadings thereto. If an amended motion for judgment is not timely filed as to any count, then such count will be dismissed with prejudice.

March 15, 1989

This case is before the Court on the demurrer of Air Transit, Incorporated ("Air Transit") to the Amended Motion for Judgment filed December 12, 1988. The Amended Motion for Judgment alleges that Air Transit violated the Virginia Retail Franchising Act (Virginia Code Sections 13.1-557 et seq.) ("VRFA") by the unlawful cancellation of franchises granted to the individual plaintiffs to provide taxicab service as owner-operators. The Court has considered all the memoranda filed by counsel and the arguments of counsel on March 1, 1989.

For the reasons hereinafter set forth, the demurrer is sustained.

On a demurrer, all facts well pleaded and all inferences properly drawn from the facts alleged are admitted. The question is whether the facts as alleged and properly inferred state a cause of action. All references to facts in this opinion are either well pleaded facts or facts properly inferred from the facts alleged in the Amended Motion for Judgment.

Under a July, 1983, agreement with the United States of America, represented by the Federal Aviation Administration ("FAA"), Air Transit was given the exclusive right to provide taxicab service at Dulles International Airport, now Washington Dulles International Airport ("Dulles Airport"). *See* Exhibit A to the Amended Motion for Judgment. Pursuant to the July, 1983, agreement, Air Transit entered into agreements with each of the four plaintiffs (the "owner-operator agreements") to allow them to operate their taxicabs at Dulles Airport. Each owner-operator agreement is in the form as the agreement executed by plaintiff Parsa and attached to the Amended Motion for Judgment as Exhibit B. All of the agreements were executed prior to the effectiveness in 1987 of the lease between the United States of America and the Metropolitan Washington Airports Authority (the "MWAA") whereby the MWAA assumed the operating responsibility for Dulles Airport. It was agreed at oral argument that the 1987 lease agreement could be considered as an allegation of the Amended Motion for Judgment for purposes of the demurrer. Under Amendments No. 7 and 8 to the July, 1983, agreement, the MWAA agreed to assume all rights, liabilities, and obligations of the United States (FAA) under the agreement. The MWAA became an assignee of the United States under the 1983 agreement.

The plaintiffs assert that the owner-operator agreements constitute "franchises" under the VFRA (paragraph 30 of the Amended Motion for Judgment). Each owner-operator agreement was executed and terminated "on or about" the following dates:

| Plaintiff | Executed | Terminated |
|-----------|----------|------------|
| Parsa | 12-03-84 | 05-07-87 |
| Ebrahimoff | 03-12-84 | 07-19-87 |
| Ansaripour | 01-14-85 | 05-27-87 |
| Ilkhan | 05-07-85 | 06-25-87 |

Under paragraph 12(b) of the owner-operator agreements, the agreement was terminable at the will of either party without cause. No reasonable cause existed at the time each agreement was terminated by Air Transit.

Virginia Code Section 13.1-564 provides that it is unlawful to cancel a franchise without reasonable cause. Under Section 13.1-571, any franchisee who has suffered damages by reason of any violation of Section 13.1-564 may bring an action against its franchisor to recover the damages sustained by reason thereof.

Under the owner-operator agreements, the plaintiffs are required to follow certain procedures and adhere to certain regulations concerning the providing of taxicab services at Dulles Airport. In addition, their taxicabs are required to be marked with "Washington Flyer" on their exterior as specified in the owner-operator agreements. "Washington Flyer" is a trade name and the sole property of the FAA. The July, 1983, agreement and its amendments contain specific requirements for the use and display of "Washington Flyer" on taxicabs, and such agreement is made a part of each owner-operator agreement and binding on each owner-operator, such as the plaintiffs.

Under paragraphs 9 and 29 of the Amended Motion for Judgment, the plaintiffs allege that the MWAA is a franchisor under the VRFA because it is a signatory to the July, 1983, agreement having assumed all the rights, liabilities, and obligations of the United States under the agreement. Air Transit is alleged to be a "franchisor" or a "sub-franchisor" under the VRFA because it is a signatory to each owner-operator agreement and the July, 1983, agreement.

Notwithstanding the allegations above, Air Transit or the MWAA cannot be considered a "franchisor" or "sub-franchisor" unless a "franchise" actually exists. In fact, the plaintiffs allege in paragraph 30 that the owner-operator agreements constitute the "franchises." Under Section 13.1-559(b), a "franchise" means a written agreement. The

interpretation of a clear and unambiguous agreement is a matter of law for the Court to decide. *See Winn v. Aleta Construction Co.*, 227 Va. 304 (1984); 4B Michie's Jurisprudence, *Contracts*, Section 53. There are no allegations that the agreements are unclear or unambiguous. Therefore, I am of the opinion that the Court must decide whether the owner-operator agreements are, as a matter of law, "franchises," and, incidental thereto, whether Air Transit is a "franchisor" or a "sub-franchisor," whether the MWAA is a "franchisor" or whether the plaintiffs are "franchisees" under the VRFA.

Because the definitions of "franchisee," "franchisor," and "sub-franchisor" contain the word "franchise," it must first be determined if the owner-operator agreements are "franchises." A "franchise" is defined in Section 13.1-559(b). It has two essential elements, as follows:

> (1) A franchisee is granted the right to engage in the business of offering, selling, or distributing goods or services at retail under *a marketing plan or system* prescribed in substantial part by a franchisor. (Emphasis mine).
>
> (2) The operation of the franchisee's business *pursuant to such plan or system* is *substantially associated* with the franchisor's trademark, service mark, trade name, logotype, advertising, or other commercial symbol designating the franchisor or its affiliate. (Emphasis mine).

I am of the opinion that each owner-operator agreement does set forth a "marketing plan or system." The agreements provide a very detailed plan or system under which the owner-operators must provide taxicab services at Dulles Airport. Although this is an element of a franchise, it is not the most important of the two elements because it is not uncommon for a contract requiring personal services to prescribe what could be considered a "marketing plan or system." It is the second element concerning the trademark or other logo that distinguishes the ·franchise. It is the ability to utilize the marketing plan or system as well as the logo that makes a franchise so desirable,

and which, in turn, has led to the inequities in the franchise system which the VRFA is designed to correct. *See* Code Section 13.1-558.

I feel that it is very significant that in the second element of a franchise as defined in Code Section 13.1-559(b)(2) that the General Assembly chose to provide that the "operation of the franchisee's business *pursuant to such plan or system* is substantially associated with" the logo. It did not choose to say simply that the franchisee's business must be substantially associated with the logo. In wording the statute as it did, the legislature exhibited an intent that there must be something special and distinct with not only the plan or system but also with the logo. The logo must call to the mind of the customer of a franchise a substantial association with the plan or system. For example, the golden arches signify to a hungry person a hamburger prepared a certain way. Or, looking at it from the alleged franchisee's point of view, the importance of the agreement is not what is on the side of his taxicab, but is the right to operate his taxicab at Dulles Airport.

The owner-operator agreements show nothing more than that the owner-operators had to paint the exterior of their taxicabs a certain way in order to be able to participate in the exclusive right that Air Transit had to provide taxicab service at Dulles Airport. There are no facts alleged in the Amended Motion for Judgment that the taxicab services at Dulles Airport, as required under the owner-operator agreements and substantially associated with the "Washington Flyer" logo, are unique or distinct from the taxicab services provided at any other major airport. There is only the general allegation of "substantially associated" in paragraph 13 of the amended Motion for Judgment. There are no allegations that the taxicab services *as they are provided at Dulles Airport pursuant to the owner-operator agreements* are substantially associated with the "Washington Flyer" logo. The requirements concerning the logo are no different than the requirements concerning, for example, a meter, a radio, a chauffeur's license, or vehicle maintenance.

The owner-operator agreements show clearly on their face that Air Transit has the exclusive right to operate a taxicab concession at Dulles Airport, and it can be

reasonably inferred that the agreements allowed the plaintiffs to participate in what is a monopoly on taxicab service at the airport. There being nothing in the agreements to indicate that there is anything special or unique ·about the taxicab service at Dulles Airport under the owner-operator agreements or that such service *as it exists at Dulles Airport* is substantially associated with the "Washington Flyer" logo, the owner-operator agreements do not rise to the level of a franchise. The taxicab service may be associated with the logo · under the agreements, but the facts alleged do not show that it is substantially associated with the logo. Under Section 13.1-559(b), the franchise is a written agreement. Therefore, facts outside of the agreement itself cannot be used to elevate the agreement to a franchise.

The foregoing construction of Code Section 13.1-559(b)(2) are consistent with a plain meaning rule. The VRFA is in derogation of the common law right to contract and provides for criminal penalties. It should, therefore, be construed strictly. *See O'Conner v. Smith,* 188 Va. 214 (1948).

For the reasons set forth in the memoranda of the defendant, I am of the opinion that the law governing the rights of the plaintiffs should be as it was in effect at the time the plaintiffs entered into the owner-operator agreements, and that at that time, the United States and the FAA were not subject to the VRFA. Subsequent changes in the law cannot escalate the plaintiffs' rights. Further, I cannot find Air Transit to be a "sub-franchisor" under Section 13.1-559(e) because the definition set forth therein implies that a franchisor has authority over a larger franchise area than a sub-franchisor. Here there is no question that under the allegations of the Amended Motion for Judgment that for all purposes the franchise area is Dulles Airport.

Assuming that the owner-operator agreements do constitute franchises, I feel that the agreements do require the franchisee to establish a place of business in Virginia, specifically at Dulles Airport.

The demurrer is sustained on all grounds except the second and the eighth. The plaintiffs have previously been granted leave to amend (see the opinion letter of November 22, 1988) primarily because of the failure to

include the owner-operator agreements as a part of the motion for judgment. The agreements have now been reviewed by the Court and have been found not to constitute franchises as a matter of law. Therefore, no further leave to amend will be granted, and the case will be dismissed with prejudice.