# Richard Harris, Executor of the Estate of Joyce Ann Harris, Deceased

## v.

## T.I., Inc., et al.

Record No. 910464

January 10, 1992

Present: All the Justices

*Peter A. Cerick* for appellant.

*Gary J. Spahn (Dabney J. Carr, IV; Mays & Valentine,* on brief), for appellee Truxmore, Inc.

*James W. Tredway, III (Christian, Barton, Epps, Brent & Chappell,* on brief), for appellee T.I., Inc.

JUSTICE STEPHENSON delivered the opinion of the Court.

Richard Harris, Executor of the Estate of Joyce Ann Harris, brought this products liability action against T.I., Inc., a terminated Virginia corporation (T.I.), formerly Truxmore Industries, Inc. (Truxmore Industries), and against Truxmore, Inc. (Truxmore), to recover damages for the alleged wrongful death of his decedent. The trial court sustained demurrers filed by both defendants and entered final judgment in their behalf. The executor appeals.

## I

The facts are derived from allegations in the executor's amended motion for judgment and in his second amended motion for judgment, including the exhibits attached to and made a part of each. On August 24, 1988, the decedent was struck and killed by a trash truck owned and operated by David Cooper.* The decedent, who was blind, was walking with her Seeing Eye dog along the side of a service road adjacent to Route 236 in Fairfax

---

\* The executor settled his claim against Cooper for $100,000 and executed a release and covenant not to sue.

County. The truck was backing when it struck and killed the decedent. No backup warning signal was sounding because the truck was not equipped with such a warning device.

Truxmore Industries manufactured the truck and sold it to Cooper on January 13, 1981. At the time the truck was sold, prevailing industry standards strongly recommended, but did not mandate, the installation of an audible backup warning device. Such systems had been in use since the late 1960's, and in 1984, the American National Standards for Refuse, Collecting and Compacting Equipment Safety (ANSI) were amended to provide the following mandatory language in § 7.1-14.2:

> An external audible warning signal device conforming to ANSI/SAE J994b, Type A, B or C, *shall* be provided to actuate (1) when the vehicle is operated in reverse or (2) when top end tail gates are open.

(Emphasis added.)

On June 26, 1985; Truxmore Industries sold virtually all of its assets to Truxmore. The "Asset Purchase Agreement," executed by the parties, provided, *inter alia*, that Truxmore assumed

> all liabilities and obligations of [Truxmore Industries] arising after or to be performed after the Closing Date pursuant to and under all Material Contracts listed on Schedule 4.11 and all other contracts, leases, commitments and agreements of [Truxmore Industries] which were entered into in the ordinary course of business and which are not Material Contracts.

The agreement also provided that Truxmore Industries was required to change its corporate name and that, for six years, neither Truxmore Industries nor any entity owned or controlled by it would engage in any business in competition with Truxmore.

Truxmore, as the corporate successor of Truxmore Industries, undertook essentially the same manufacturing operation as its predecessor at the same physical location. It held itself out to be the ongoing concern of its predecessor; maintained, for a time, essentially the same personnel; made a continued, active effort to maintain the same customers; and acquired its predecessor's goodwill.

As required by the agreement, on August 9, 1985, Truxmore Industries changed its corporate name to T.I., Inc. On July 2, 1986, T.I. filed Articles of Dissolution and Articles of Termination with the State Corporation Commission, and on the same date, a Certificate of Termination was issued by the Commission.

After purchasing the business, a representative of Truxmore visited Cooper, informed him of the purchase, and advised him that Truxmore, in continuing to operate the business, would be available to satisfy Cooper's needs. At all times, Truxmore knew where Cooper resided and where the truck was located. At the same time, and in compliance with the ANSI standards, Truxmore adopted a policy requiring the installation of audible backup warning devices on all future Truxmore trash trucks.

When Cooper purchased the truck, he received a warranty which indicated that, should replacement parts for the truck be required, they could only be feasibly replaced by Truxmore Industries. Additionally, replacement parts for the trash packer were available only at the Truxmore facility in Richmond—Truxmore being the exclusive seller of such parts. Truxmore also approached Cooper in an effort to sell him another Truxmore trash truck. Throughout this time period, however, Truxmore neither advised Cooper about the industry standards requiring an audible backup warning device nor warned Cooper of the dangers in not installing such a device.

## II

In sustaining T.I.'s demurrer, the trial court ruled that, pursuant to Code § 13.1-755, the executor had no right of action because the wrongful death occurred subsequent to T.I.'s corporate termination. Code § 13.1-755, in pertinent part, provides as follows:

> The termination of corporate existence shall not take away or impair any remedy available to or against the corporation, its directors, officers or shareholders, for any right or claim existing or any liability incurred, prior to such termination.

The executor concedes that "[t]he cause of action did not arise until . . . after . . . [T.I.'s existence] had terminated." He contends, nonetheless, that a cause of action should be preserved against a terminated corporation where, as here, a defective prod-

uct sold before the date of termination causes injury thereafter. He points to Code § 13.1-755, focusing primarily upon the word "liability" contained therein. The executor asserts that "liability," as used in Code § 13.1-755, "encompasses future or contingent obligations." Thus, he argues, "a liability is incurred when a defective product is sold."

Under the common law, once a corporation's existence is terminated, its capacity to sue, or to be sued, likewise is terminated, irrespective of when the cause of action arose. *Shepherd* v. *Box Company*, 154 Va. 421, 425, 153 S.E. 649, 650 (1930). Code § 13.1-755, however, partially changed the common law rule. The statute, being in derogation of the common law, must be strictly construed. *Hyman* v. *Glover*, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986). This rule of strict construction applies even if the statute is remedial. *O'Connor* v. *Smith*, 188 Va. 214, 222, 49 S.E.2d 310, 313 (1948); *Hannabass* v. *Ryan*, 164 Va. 519, 525, 180 S.E. 416, 418 (1935).

A right of action for personal injury or death, based upon negligence or breach of warranty, does not accrue until an injury occurs. *Locke* v. *Johns-Manville Corp.*, 221 Va. 951, 957, 275 S.E.2d 900, 904 (1981) (citations omitted) (emphasis added); *accord Stone* v. *Ethan Allen, Inc.*, 232 Va. 365, 368-69, 350 S.E.2d 629, 631 (1986); *First Va. Bank-Colonial* v. *Baker*, 225 Va. 72, 82, 301 S.E.2d 8, 13-14 (1983); *see* Code § 8.01-230.

Turning our attention to Code § 13.1-755, we note that only a "claim existing" or a "liability incurred" will survive the termination of a corporation's existence. These phrases are clear. Giving them their plain meaning and construing Code § 13.1-755 strictly, we conclude that a claim against a corporation must have existed or the liability of a corporation must have been incurred prior to the date of the corporation's termination in order for the claim or liability to survive the termination.

In the present case, the executor's cause of action did not arise until the accidental death of his decedent. Therefore, the executor's claim did not exist and T.I.'s potential liability was not incurred until more than two years after T.I. ceased to exist. Consequently, the trial court correctly sustained T.I.'s demurrer.

### III

The executor also contends that the trial court erred in sustaining Truxmore's demurrer. He sets forth three grounds for

holding Truxmore liable for Truxmore Industries' alleged breach of warranty. First, the executor asserts that, by the terms of the purchase agreement, Truxmore expressly or impliedly assumed Truxmore Industries' product liabilities. Second, he claims that Truxmore is liable for the claims against Truxmore Industries because Truxmore is the corporate successor. Finally, the executor alleges that Truxmore had a duty to warn Cooper of the dangers of not having an audible backup warning system installed on the truck.

## A

In support of the executor's claim that Truxmore assumed Truxmore Industries' product liabilities, Truxmore relies, in part, on the following provision in Schedule 2.02(c) of the purchase agreement:

I. "Assumed Liabilities" shall mean the following liabilities and obligations of Seller:

(a) all liabilities and obligations of Seller arising after or to be performed after the Closing Date pursuant to and under all Material Contracts listed on Schedule 4.11 and all other contracts, leases, commitments and agreements of Seller which were entered into in the ordinary course of business and which are not Material Contracts.

█ It is readily apparent that Truxmore did not expressly agree to assume Truxmore Industries' product liabilities. The executor contends, however, that the provision implies such an assumption of liabilities. We do not agree.

█ The "Assumed Liability" provision is expressly limited to *contractual* liabilities. The executor's product liability action, however, is based upon an alleged breach of implied warranty imposed by Code § 8.2-314. The action does not arise by virtue of the terms of the sales contract with Cooper. Consequently, the "Assumed Liability" provision cannot be read to imply that Truxmore assumed Truxmore Industries' liabilities for breach of implied warranties.

We also reject the executor's claim that several other provisions of the purchase agreement, when read with the "Assumed Liabilities" provision, imply an assumption of product liability. None of the other provisions provide for, or even refer to, the assumption

of liabilities, contractual or otherwise. Rather, the provisions involve only Truxmore's purchase of all of Truxmore Industries' assets and goodwill.

B

■ We next consider whether Truxmore is liable as the corporate successor of Truxmore Industries. In order to hold a purchasing corporation liable for the obligations of the selling corporation, it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities, (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations, (3) the purchasing corporation is merely a continuation of the selling corporation, *or* (4) the transaction is fraudulent in fact. *Pepper* v. *Dixie Splint Coal Co.*, 165 Va. 179, 191, 181 S.E. 406, 410 (1935); *Peoples Nat. Bank* v. *Morris*, 152 Va. 814, 819, 148 S.E. 828, 829 (1929).

■ We already have concluded that Truxmore neither expressly nor impliedly assumed Truxmore Industries' product liabilities. The executor has not alleged fraud or that there was a consolidation or *de facto* merger of the two corporations. Thus, the executor relies solely upon the "mere continuation" exception.

In support of his contention that Truxmore was a "mere continuation" of Truxmore Industries, the executor alleges that Truxmore acquired all of its predecessor's assets, including the goodwill; undertook essentially the same manufacturing operation as that of its predecessor, and at the same location; held itself out to the world as the ongoing concern of its predecessor; maintained, for a time, essentially the same personnel; made an active effort to maintain the same customers; required its predecessor to cease its ordinary business operation and to liquidate its business as soon as practicable; and assumed some of its predecessor's liabilities.

■ A common identity of the officers, directors, and stockholders in the selling and purchasing corporations is the key element of a "continuation." *Pepper*, 165 Va. at 190, 181 S.E. at 410; *Bud Antle, Inc.* v. *Eastern Foods, Inc.*, 758 F.2d 1451, 1458-59 (11th Cir. 1985); *Travis* v. *Harris Corp.*, 565 F.2d 443, 447 (7th Cir. 1977). When, however, the purchase of all the assets of a corporation is a bona fide, arm's-length transaction, the "mere continuation" exception does not apply. *Leannais* v. *Cincinnati, Inc.*, 565 F.2d 437, 440 (7th Cir. 1977).

In the present case, the executor has not alleged a common identity of officers, directors, and stockholders, nor has he alleged that the acquisition was not an arms-length transaction. Therefore, the facts alleged by the executor would not support a finding that the "mere continuation" exception applies.

The executor, however, invites us to adopt either the "product line exception" or the "expanded mere continuation" exception, which a small minority of jurisdictions has adopted. *See, e.g., Cyr v. B. Offen & Co., Inc.*, 501 F.2d 1145 (1st Cir. 1974) (applying New Hampshire law); *Ray v. Alad Corp.*, 19 Cal.3d 22, 560 P.2d 3, 136 Cal. Rptr. 574 (1977); *Turner v. Bituminous Cas. Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976); *Ramirez v. Amsted Indus., Inc.*, 86 N.J. 332, 431 A.2d 811 (1981); *Dawejko v. Jorgensen Steel Co.*, 290 Pa. Super. 15, 434 A.2d 106 (1981). We decline the invitation. These exceptions are based upon the doctrine of strict liability—a doctrine that is not recognized in Virginia.

## C

Finally, we determine whether the trial court erred in ruling as a matter of law that the executor failed to state a cause of action against Truxmore based upon an independent duty to warn Cooper about the alleged defects in the truck. The executor contends that Truxmore, as the successor corporation, had an independent duty to warn Cooper about the dangers in not having the backup warning device installed on the truck, which device had been mandated by industry standards subsequent to the time Cooper purchased the truck. The executor alleged the following facts to support this cause of action:

(1) a representative of Truxmore called on Cooper after the asset purchase to let Cooper know that the business would continue as before;

(2) Truxmore knew where Cooper resided;

(3) Cooper bought replacement parts for the truck from the Truxmore plant in Richmond, Virginia, which plant was the only source for such parts;

(4) Truxmore was in contact with Cooper prior to the accident, endeavoring to sell him a new truck.

██ We previously have not considered whether there is a post-sale duty to warn on the part of a successor corporation. In those jurisdictions that have recognized such a duty, the courts have looked to whether there was a direct and continuing relationship between the successor and the predecessor's customers. *Polius* v. *Clark Equip. Co.*, 802 F.2d 75, 84 (3rd Cir. 1986). A mere casual contact is not sufficient. *Stratton* v. *Garvey Int'l, Inc.*, 9 Kan. App. 2d 254, 258, 676 P.2d 1290, 1294 (1984). The contact must have been substantial and connected with the predecessor corporation in a meaningful way. *Id.* Indeed, a duty to warn does not arise by a showing that the successor corporation merely was conducting the same business activity with the predecessor's customer. *Id.* at 261, 676 P.2d at 1296.

Some of the factors that establish such a relationship are the successor party's succession to service contracts, coverage of the customer's allegedly defective product by a contract, service of the product by the successor, and the successor's knowledge of the defect and of the customer's location. *Polius*, 802 F.2d at 84. Thus, courts in jurisdictions that recognize the duty to warn have overwhelmingly rejected claims based upon the duty when there is no service obligation or there has been no actual service of the product. *See, e.g., J & B Co.* v. *Bellanca Aircraft Corp.*, 911 F.2d 152, 154 (8th Cir. 1990); *Tucker* v. *Paxson Mach. Co.*, 645 F.2d 620, 626-27 (8th Cir. 1981); *Travis*, 565 F.2d at 449; *Niccum* v. *Hydra Tool Corp.*, 438 N.W.2d 96, 100 (Minn. 1989); *Goldman* v. *Packaging Indus., Inc.*, 144 A.D.2d 533, 536, 534 N.Y.S.2d 388, 391 (1988); *Gonzalez* v. *Rock Wool Eng'g & Equip. Co.*, 117 Ill. App. 3d 435, 438, 453 N.E.2d 792, 795 (1983); *Stratton*, 9 Kan. App. 2d at 261, 676 P.2d at 1296.

██ In the present case, the facts alleged by the executor would establish, at most, a mere casual contact between Truxmore and Cooper. If proved, these facts would not establish the existence of the requisite special relationship. Thus, assuming, without deciding, that in a proper case we would recognize a successor corporation's post-sale duty to warn, no such duty could arise under the facts alleged by the executor.

## IV

In sum, we conclude that the trial court did not err in sustaining the demurrers filed by T.I. and by Truxmore. Accordingly, the trial court's judgment will be affirmed.

*Affirmed.*