## CIRCUIT COURT OF ALBEMARLE COUNTY

Health and Racquet Club, Inc.

    v.

Fitness Today
of Charlottesville

          Case No. 7312-C

Health and Racquet Club

    v.

Fitness Today
and Fitness South

          Case No. 7397-C

Fitness Today
of Charlottesville

    v.

Health and Racquet Club

          Case No. 4950-L

          September 1, 1992

BY JUDGE PAUL M. PEATROSS, JR.

This case is a consolidation of three separate cases arising out of an asset purchase agreement between Fitness Today of Char-

lottesville, Inc., and Fitness South of Virginia, Inc. The first suit (Chancery No. 7312) was instituted when Health & Racquet filed its Petition for Preliminary and Permanent Injunctions against FTC on or about May 2, 1991. On or about May 17, 1991, the petition was amended to include Fitness South as a party. The Original Suit seeks the injunctions in order to compel FTC and Fitness South to honor certain health club memberships pursuant to an agreement between FTC and Health & Racquet. Health & Racquet seeks to hold Fitness South liable for such membership obligations as the continuation of FTC.

On September 25, 1991, the Court entered an order allowing Fitness South to file a Cross-Bill against Health & Racquet in the Original Suit. The Cross-Bill alleges that Health & Racquet made certain misrepresentations and omissions of fact to FTC during the negotiation of the Agreement and the sublease of the same date between Health & Racquet and FTC. Fitness South seeks to have the Agreement and the Sublease declared null and void.

The second suit arose when Health & Racquet filed a separate Bill of Complaint (Chancery No. 7397) on August 5, 1991, against FTC and Fitness South alleging breach of the Agreement and Sublease by FTC. Health & Racquet also alleges that the transfer to Fitness South by FTC was a fraudulent conveyance. In the Bill of Complaint, Health & Racquet again alleges that Fitness South is merely a continuation of FTC. Health & Racquet moves that the Court grant judgment, jointly and severally, in the amount of rental payments due as of the date of judgment as well as for taxes, utilities, insurance, post and pre-judgment interest, and attorneys fees. Under both the fraudulent conveyance theory and the mere continuation theory, Fitness South is alleged to be liable to Health & Racquet under the terms of the Agreement and Sublease.

Finally, the third suit (At Law No. 4950) came about when FTC filed its Motion for Judgment against Health & Racquet on August 10, 1991, alleging that Health & Racquet made fraudulent representations to FTC in order to induce FTC to enter into the Agreement and Sublease. The Motion for Judgment also alleges breach of the Agreement and Sublease by Health & Racquet. The Motion for Judgment asks for judgment in the amount of $123,000 for damages suffered by FTC as a result of the alleged misrepresentation and breach.

On the Motion of Health & Racquet, this Court consolidated the Original Suit, the Bill of Complaint, and the Motion for Judgment and ordered that all future pleadings be filed with the Original Suit.

*Factual Findings*

Fitness Today is a corporation which used to run a health club facility in Albemarle County. The facility has been purchased from its previous owner, Health & Racquet Club, Inc., under a contract (Agreement) and sublease dated October 11, 1989. During the negotiations leading up to the Agreement, Health & Racquet allegedly made a number of representations regarding the receivables which Fitness Today might expect from the health club operations. Fitness Today subsequently found these representations to be exaggerated and experienced considerable financial difficulties during the first few months of its ownership. Due to these financial difficulties, the parties then amended their original arrangement (Amended Agreement) to more adequately compensate Fitness Today for the unexpectedly low receivables coming into the operation. Health & Racquet agreed to pay Fitness Today an extra $100,000 and apparently took over lease payments on the facility for eighteen months. Fitness Today agreed to honor certain health club memberships which existed prior to the original Agreement.

Even after the Amended Agreement, however, Fitness Today continued to struggle. The principal shareholders of Fitness Today, led by Mr. Watson, originally sought to sell the entire corporation to a third party. When that failed, however, they determined to create a new corporation, Fitness South, into which the assets and operation of Fitness Today would then be transferred. Mr. Watson was apparently the principal party in both corporations, and he thoroughly mixed the accounts and affairs of the two while Fitness South was beginning its operation.

During the transition, Fitness South made great efforts to maintain the goodwill of the existing Fitness Today members and pointedly avoided mentioning any transfer of ownership when advertising the change of facilities from Albemarle County to the present location in Seminole Square. Yet when Fitness Today's assets were valued for determining the purchase price, the existing club memberships were given a negative value of $30,000. In addition, the two corporations used no independent auditors or appraisers to oversee the transfer of assets and generally failed to maintain any semblance of an arm's-

length transaction. When the smoke had finally cleared, Fitness Today was left with $20,000 for its entire operation, while Fitness South had a thriving business operation free of both the prior Sublease and the former memberships which it had agreed to honor in the Amended Agreement. Fitness Today's assets were clearly insufficient to pay its creditors, and Health & Racquet now seeks compensation directly from Fitness South, on the grounds that it is nothing more than a "mere continuation" of Fitness Today's corporate existence. In addition, Health & Racquet seeks to enjoin Fitness South from refusing to honor its prior members as called for in the Amended Agreement with Fitness Today. Fitness Today seeks to avoid both the Agreement and the Sublease on the grounds that it was fraudulently induced to enter into those agreements by Health & Racquet's misrepresentations and collect damages.

### Issues Presented

This court must consider whether, under Virginia law, Fitness Today is still entitled to repudiate its contract with Health & Racquet for alleged misrepresentations and recover damages, even though the two parties subsequently amended their contract in order to compensate Fitness Today for any exaggerations which may have been made. As a corollary, the court must determine whether Fitness South is entitled to repudiate the contractual agreement, as a result of alleged misrepresentations, as alleged in its Cross-Claim under Case No. 7312. In addition, the court must determine whether Health & Racquet is entitled to judgment for unpaid rents (Count I of Case No. 7397) and/or to pursue the assets transferred to Fitness South from Fitness Today on the grounds that the transfer amounted to a fraudulent conveyance under Va. Code § 55–80 (Count II of Case No. 7397. Finally, this court must decide whether Health & Racquet may bring an action against Fitness South for liabilities incurred by Fitness Today under the "mere continuation" doctrine (Count I of Case No. 7397) and whether Fitness South should be permanently enjoined from refusing to honor the memberships of former Health & Racquet club members (Case No. 7312).

### Discussion of Law and Rulings

A party to a contract may generally avoid his contractual obligations if he can demonstrate, by clear and convincing evidence, that he entered into the contract in reasonable reliance on the material

misrepresentations of the other party to the contract. *Nationwide Insurance Co. v. Patterson*, 229 Va. 627, 629–631 (1985). In the instant case, Fitness Today claims that Health & Racquet exaggerated the profitability of the existing health club operation and that those exaggerations constituted material misrepresentations which induced Fitness Today to enter into the Albemarle Facility Agreement and Sublease. Accordingly, Fitness Today seeks to avoid its contract with Health & Racquet.

Virginia courts have held, however, that a party seeking to repudiate a contract on the basis of fraud must act promptly, and he will be deemed to have waived his right of repudiation if, after discovery of the fraud, he treats the contract as a continuing obligation. *Link Associates v. Jefferson Standard Life Insurance Co.*, 223 Va. 479, 484–85 (1982). Similarly, where parties enter into contractual adjustments of their obligations with knowledge of prior fraudulent statements, such adjustments result in the waiver of any subsequent claims for the alleged misrepresentations. 37 Am. Jur. 2d, *Fraud and Deceit*, § 397. *See also, Smith v. Roach*, 126 Cal. Rptr. 29, 33 (Cal. App. 1975); *Lumber Industries, Inc. v. Woodlawn Furniture Corp.*, 274 N.Y.S.2d 813, 814–15 (App. Div. 1966). The party seeking to repudiate the contract must have known of the alleged misrepresentations at the time the new agreement was made, however, or no waiver will be inferred by the courts. *Link Associates*, 223 Va. at 485; *see also, Bissett v. Ply-Gem Industries, Inc.*, 533 F.2d 142, 151 (5th Cir. 1976). Proof of waiver, which is a factual determination for the court, must be clear and convincing. *Link*, 223 Va. at 485.

In the case now before the court, the evidence clearly demonstrates that Fitness Today knew of the allegedly fraudulent representations of which it now complains when it entered into the Amended Agreement with Health & Racquet. The very structure of the Amended Agreement, which called for the payment to Fitness Today of $100,000 and other items of consideration, was obviously an attempt to correct for Health & Racquet's alleged exaggerations. A principal shareholder of Fitness Today testified that the corporation consciously chose to enter into the new arrangement with Health & Racquet rather than seek a legal remedy for fraud. In fact, it appears that the Amended Agreement was negotiated entirely in response to Fitness Today's allegations of misrepresentation.

There is no allegation that Health & Racquet failed to live up to its obligations under the Amended Agreement. The court therefore

finds that Fitness Today was aware that representations made by Health & Racquet at the time of the original Agreement may have been fraudulent and that it waived any claim for fraud which it may have had by entering into the Amended Agreement with Health & Racquet. The Amended Agreement and Sublease between Health & Racquet and Fitness Today remain valid and enforceable.

## Breach and Damages

Health & Racquet has demonstrated that Fitness Today failed to perform its contractual obligations under the Amended Agreement and Sublease. Furthermore, it has presented evidence of damages for delinquent rents resulting from Fitness Today's breach totaling $183,562 as of June, 1992, which is $169,820.00 in principal and $13,742.57 in interest through June 30, 1992. The court finds this evidence persuasive and awards Health & Racquet judgment for the aforesaid sum plus principal and interest for the months of July and August, 1992, with interest at the judgment rate from date of judgment and costs against Fitness Today for breach of its contractual obligations. As there is no reasonable basis in the contract for an award of attorneys' fees, however, the court denies Health & Racquet's request for fees.

## Fraudulent Conveyance

Health & Racquet offers two theories of recovery against Fitness Today and Fitness South based on its contractual relationship with Fitness Today. First, it seeks to obtain a judgment directly against Fitness South on the grounds that it is a "mere continuation" of Fitness Today and should therefore be held accountable for its predecessor's liabilities. Health & Racquet also seeks to avoid the transfer of assets from Fitness Today to Fitness South as a fraudulent conveyance. The court will now address the latter claim.

The law in Virginia on fraudulent conveyances has been codified in Va. Code § 55–80, which states that every gift, conveyance, assignment, or transfer given with intent to delay, hinder, or defraud creditors from what they are or may lawfully be entitled to shall, as to such creditors, be void. A purchaser for valuable consideration is protected only if he lacks notice of the transferor's fraudulent intent at the time of the transfer. *Matter of Claxton*, 30 B.R. 199, 211 (Bankr. E.D. Va. 1983). Actual knowledge of the transferor's fraudulent intent is not required. Rather, notice of such circumstances as

would put a reasonable person on inquiry is sufficient. *Bank of Commerce v. Rosemary & Thyme, Inc.*, 218 Va. 781 (1978).

*Fraudulent Intent*

There are many facts and circumstances which the law considers as badges of fraud from which the fraudulent intent of a transfer may be inferred. These include, but are not limited to: (1) a close relationship between the transferor and transferee; (2) the insolvency of the transferor, either before or immediately after the transfer; (3) the pursuit of the grantor by his creditors at the time of the transfer; and (4) a lack of adequate consideration. *Hutcheson v. Savings Bank of Richmond*, 129 Va. 281 (1921).

Based on the facts of this case, the court finds that the transfer of assets from Fitness Today to Fitness South was made with fraudulent intent. That there was a close relationship between the parties goes without saying. The principals and employees of both corporations were virtually identical. It is also clear from the record that, if Fitness Today was not yet insolvent prior to the transfer, it was certainly unable to pay its debts as they came due after the transfer was made.

Perhaps most persuasive, however, is the court's finding that the transfer was made for substantially less than adequate consideration. In determining the sales price, a negative value of $30,000 was placed on Fitness Today's memberships contracts, even though Fitness South's subsequent efforts to maintain the appearance of continuity with Fitness Today demonstrates that it considered its predecessor's goodwill to be a valuable asset. No independent appraisals of equipment value were made, and there were no arm's length negotiations between the parties. Fitness Today also paid a substantial amount of Fitness South's start-up costs and was not reimbursed for those expenses until after this suit had been filed by Health & Racquet.

*Notice*

The court also finds that the evidence in the instant case supports Health & Racquet's claim that Fitness South was aware of Fitness Today's fraudulent intent at the time of the transfer. The practical effect of the transfer to Fitness South was to render Fitness Today a shell corporation, with no way to conduct its business or to pay its debts. Since the ownership of the two corporations overlapped, it is clear that Fitness South had actual notice of this state of affairs.

Even if there were no overlapping ownership, however, the court would still find that Fitness South had notice of the fraudulent nature

of the transaction. Where a corporation transfers all its assets to another corporation with a view to going out of business and there is nothing left with which to pay its debts, the transferee is charged with notice by the very circumstances of the transaction. *Peoples National Bank of Rocky Mount v. Morris*, 152 Va. 814, 820 (1929).

Therefore, Fitness South, having both actual and constructive notice of the fraudulent nature of the transfer, took the transferred assets subject to the claims of creditors. Health & Racquet, as a creditor of Fitness Today, may regard the transfer as void and may pursue the transferred assets in satisfaction of its claims, including the aforesaid rents and interest in damages it is due for Fitness Today's breach of contract.

### Successor Liability

Health & Racquet also seeks to pursue its claims against Fitness South directly, even though there is no contractual relationship on which to base such a claim, on the theory that Fitness South is a "mere continuation" of Fitness Today.

The law in Virginia on corporate successor liability is not well developed, but it is clear that, as a general rule, the purchaser of a corporation's assets does not, by reason of the purchase of those assets, become liable for that corporation's debts and liabilities, as well. *Harris v. T. I., Inc.*, 243 Va. 63, 70 (1992). This general rule is based on the notion that a sale of corporate assets transfers an interest separable from the corporate entity and does not result in a transfer in of unbargained-for liabilities from the seller to the purchaser. *Gall Landau Young Construction Co. v. Hedreen*, 816 P.2d 762 (Wash. App. 1991). Exceptions to this rule occur where: (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities; (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or de facto merger of the two corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; *or* (4) the transaction is fraudulent in fact. *Harris*, 243 Va. at 70.

The only exception at issue in the present case is the "mere continuation" exception. In order to make out a successful claim under the "mere continuation" doctrine, a plaintiff must first demonstrate that the asset purchase was not a bona fide, arm's length transaction. *Id.* A "common identity" of the officers, directors, and stockholders in both the selling and purchasing corporations is really the "key

element" of a continuation, though. *Id.* The court notes that the Virginia Supreme Court has not required that there be a *complete* identity, however, and that other courts and commentators have found it sufficient that "the legal and economic ownership of the two corporations be essentially the same both before and after the transaction." *Crawford Harbor Associates v. Blake Construction Co.*, 661 F. Supp. 880, 885 (E.D. Va. 1987) (quoting from Yamin, *The Achilles Heel of the Takeover: Nature and Scope of Successor Corporation Products Liability in Asset Acquisitions*, 7 Harv. J.L. & Pub. Pol'y 185, 226 (1984)). *See also, Peterson v. Harville*, 445 F. Supp. 16, 24 (D. Ore. 1977).

Based on the evidence before it, the court finds that the asset purchase by Fitness South was *not* an arm's length transaction but was rather the product of the close relationship between the two corporations. As noted previously, the consideration paid by Fitness South was clearly inadequate. In addition, there were none of the independent safeguards normally employed in an asset purchase between two independent corporations. Asset valuation was informal at best, and there were no formal means employed to ensure that Fitness Today would be compensated for "loans" extended to Fitness South for its start-up costs. If Fitness Today had been a publicly-traded corporation, it would be safe to say that the conduct of its officers in this transaction would have amounted to a serious breach of fiduciary duty.

In addition, the court finds that Fitness Today and Fitness South shared a "common identity" of officers, shareholders, and directors. Mr. Watson was, for all practical purposes, the primary actor in both corporations. When Fitness South was first incorporated, he was a shareholder, officer, and director of both corporations. He presently remains an officer and director of both corporations, and the evidence shows that he divested himself of his holdings in Fitness South for the sole purpose of improving Fitness South's position in the present litigation. Although the officers, shareholders, and directors of the two corporations are not identical, the economic ownership and control of the health club operation remained essentially the same before and after the asset purchase took place. To allow Fitness Today to escape liability for its obligations simply by changing its corporate name (but not its trade name) and by switching a few officers and shareholders would amount to a fraud on its creditors.

Accordingly, the court concludes that Health & Racquet has made a sufficient showing to bring the present case within the "mere con-

tinuation" exception to the corporate successor doctrine. Fitness South is therefore responsible for all of the debts and obligations which its predecessor, Fitness Today, incurred under the Agreement and Sublease, i.e., the award of the aforesaid rents, interest and costs in damages to Health & Racquet for breach of contract. Judgment is granted therefor against Fitness South.

*Injunction*

Finally, Health & Racquet asks the court to enjoin Fitness South from refusing to honor memberships previously purchased by former Health & Racquet club members. It argues that if its former members are denied the membership privileges which they previously purchased from Health & Racquet, its reputation with the public will be diminished considerably, thereby causing it irreparable and indeterminate damages.

Under Virginia law, Health & Racquet must, if it is to obtain an injunction, demonstrate that the injury which it would suffer if the injunction were not granted would be grievous and material and would not be adequately reparable in money damages. *Callaway v. Webster*, 98 Va. 790, 792 (1900). The facts of this case do not support that argument. In the first place, Health & Racquet has long since left the local area and would be unlikely to suffer material harm were its former customers to be denied their membership privileges at this late date. In addition, the mere fact that Health & Racquet is now bringing this action against Fitness Today indicates that money damages would be more than adequate. The court can imagine no greater threat to Health & Racquet's former members than the present action brought by Health & Racquet itself. In pursuing Fitness Today and its successor, Fitness South, Health & Racquet may well bring about the very harm of which it now complains. The fact that it is willing to risk this future harm in order to recover money damages for breach of contract indicates to the court that money damages, in sufficient amounts, could more than adequately compensate it for any possible damage it might suffer to its reputation. Consequently, the court finds that Health & Racquet has not made out a sufficient showing of irreparable harm to warrant a permanent injunction against Fitness Today/Fitness South, and its request for an injunction is hereby denied.