James E. BLIZZARD, Maurice L. Gamell, Jr., Rutch C. White, Mildred C. Gilliam, Russell Gilliam, James A. White, Jr., Dorothy Gamell, Phyllis Varone, Frances Cote, Marlene Williams, National Railroad Passenger Corporation d/b/a Amtrak, CSX Transportation, Inc., Diane Hollingsworth, Michelle D. Jennings, Alma Carpenter, Melanie Collins, Phyllis I. Kuehnle, Rose Gail Chenman, Plaintiffs,

v.

The NATIONAL RAILROAD PASSENGER CORPORATION d/b/a Amtrak, CSX Transportation, Inc., Sears Concrete Corporation, Defendants and Third–Party Plaintiffs,

v.

SEARS CONCRETE CORPORATION, Sears Contracting Corporation, and Sears Sand and Gravel, Inc., Third–Party Defendants.

Civ. A. No. 2:92CV428.

United States District Court, E.D. Virginia, Newport News/Norfolk Divisions.

Sept. 22, 1993.

Willard James Moody, Jr., Stephen Edward Heretick, Moody, Strople & Kloeppel, Ltd., Portsmouth, VA, for plaintiffs.

Philip Gerald Denman, David Charles Bowen, Stephen Royce Jackson Willcox & Savage, Norfolk, VA, for National R.R. Passenger Co. d/b/a Amtrak and CSX Corp. Inc.

Richard Craig Gallagher, Richard Alan Saunders, Furniss, Davis, Rashkind and Saunders, Norfolk, VA, for Sears Concrete Corp.

Roger Gaylord Hopper, Saluda, VA, for Sears Sand and Gravel, Inc.

## MEMORANDUM OPINION AND ORDER

PAYNE, District Judge.

Plaintiffs were injured when a passenger train collided with a truck owned by Sears Concrete Corporation ("Sears Concrete") on April 29, 1992, in Newport News, Virginia. Plaintiffs sued The National Railroad Passenger Corporation ("Amtrak"), the owner and operator of the train, and CSX Transportation, Inc. ("CSX") the owner of the tracks, seeking compensatory and punitive damages. Amtrak and CSX instituted a third-party action against Sears Concrete seeking contribution and indemnification, and thereafter amended their third-party complaint to join Sears Sand and Gravel, Inc. ("Sears Sand") and Sears Contracting Corporation ("Sears Contracting") as third-party defendants.

All three third-party defendants moved to dismiss the third-party actions against them. Because those motions relied on material beyond the third-party complaint, they were treated as motions for summary judgment. In a Memorandum Opinion and Order dated May 26, 1993, the court denied the motions of Sears Concrete and Sears Contracting and granted the motion of Sears Sand, finding that Sears Sand ceased to exist in 1989. The action against Sears Sand was thereupon dismissed. Amtrak and CSX then moved for partial summary judgment, contending that Sears Contracting is the corporate successor of Sears Concrete, and hence liable for its tort obligations, because: (1) there was a *de facto* merger of Sears Concrete and Sears Contracting; and (2) Sears Contracting is a mere continuation of Sears Concrete. For the reasons set forth below, the motion of Amtrak and CSX for partial summary judgment is GRANTED.

### STATEMENT OF FACTS

Sears Concrete, formerly a partnership, was incorporated in 1985. Upon incorporation, Robert J. Sears ("Robert") became president and his son, Randall K. Sears ("Randy"), became treasurer. Robert's daughter served as the corporate secretary. Robert and Randy are, and since incorporation have been, the only two shareholders of Sears Concrete, owning eighty-one and seventy-four shares respectively. Neither paid money for the stock, though they gave other consideration. Randy and Robert are also the company's only directors.

The principal business of Sears Concrete was making and hauling concrete and hauling excavated material. For these purposes, Sears Concrete owned various equipment, consisting principally of trucks and trailers. Prior to May 1992, it employed a number of individuals, including truck drivers and clerical personnel. Sears Concrete is physically located on land owned by Robert at Route 6, Box 5005, Gloucester, Virginia. Robert re-

ceived no rent from Sears Concrete for use of the land.

In early April 1992, the directors of Sears Concrete began the process of forming a new corporation for the purpose of securing more favorable workers' compensation rates. On May 1, 1992, two days after the collision which gave rise to this action, Sears Contracting was incorporated. Three weeks later, on May 20, 1992, Sears Concrete transferred its equipment to Sears Contracting. Sears Concrete received no consideration for its equity in the equipment. Sears Contracting, however, assumed responsibility for the remaining balances owed on the various pieces of equipment.

Sears Concrete also transferred its employees to Sears Contracting, imposing on them no requirement to reapply for employment. The employees continued to hold the same jobs and do the same kind of work. According to the deposition of Mr. William Early, who provided accounting and tax services to both corporations, the only difference between the two corporations was the name. Mr. Early also stated that he understood that Sears Contracting and Sears Concrete essentially were the same corporation, performing the same business.

When Sears Contracting was incorporated, Randy was named president and Robert was named secretary. Robert and Randy are the sole shareholders of Sears Contracting, each owning 500 shares. Neither gave consideration for their shares. Randy and Robert are the only directors of Sears Contracting.

The new company operates out of the same offices at the same physical location as did Sears Concrete. Sears Contracting, like Sears Concrete, pays no rent to Robert for the use of his land. Although its product line has expanded over time, upon incorporation Sears Contracting sold the same services and products as those sold by Sears Concrete immediately before the accident. Furthermore, immediately after its formation, Sears Contracting served the same customers as had Sears Concrete.

Sears Concrete, although not dissolved, ceased doing business when Sears Contracting was formed. According to Robert, Sears Concrete has retained its corporate existence primarily because of this litigation.

## DISCUSSION

The issue presented by this motion for partial summary judgment is whether liability can be imposed on Sears Contracting as the corporate successor of Sears Concrete. The parties agree that Virginia law controls the resolution of that question in this diversity action.

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, the court is not to weigh the evidence, but rather must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In so doing, the court must view the underlying facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,'" that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1338 (4th Cir.1992), *cert. den.* —— U.S. ——, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). Once this initial showing under Rule 56(c) is made, the burden of production, not persuasion, shifts to the non-moving party. The non-moving party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also*

Fed.R.Civ.P. 56(e); *Catawba Indian Tribe,* 978 F.2d at 1338.

In meeting this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts" *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356, and must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(e); *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356. There is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356; *see also Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510.

Considering these controlling principles, the court turns to the merits of the motion.

**B.  *Successor Liability***

■ As a general rule, a corporation that purchases the assets of another corporation is not liable for the debts and contingent liabilities of the selling corporation. *See, e.g., Bud Antle, Inc. v. Eastern Foods, Inc.,* 758 F.2d 1451, 1456 (11th Cir.1985); *Leannais v. Cincinnati Inc.,* 565 F.2d 437, 439 (7th Cir. 1977); *Travis v. Harris Corp.,* 565 F.2d 443, 446 (7th Cir.1977); *Crawford Harbor Assocs. v. Blake Constr. Co.,* 661 F.Supp. 880, 883 (E.D.Va.1987) (applying Virginia law); *see also* 15 William M. Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 7122 (Perm.Ed.1990). As explained recently in *Harris v. T.I., Inc.,* 243 Va. 63, 413 S.E.2d 605 (1992), Virginia recognizes four traditional exceptions to the general rule that a successor corporation does not assume the liabilities of the predecessor entity:

> In order to hold a purchasing corporation liable for the obligations of the selling corporation, it must appear that (1) the purchasing corporation expressly or impliedly agreed to assume such liabilities; (2) the circumstances surrounding the transaction warrant a finding that there was a consolidation or *de facto* merger of the two corporations; (3) the purchasing corporation is merely a continuation of the selling corporation; or (4) the transaction is fraudulent in fact.

*Harris,* 243 Va. at 70, 413 S.E.2d at 609; *see also Pepper v. Dixie Splint Coal Co.,* 165 Va.

179, 191, 181 S.E. 406, 410 (1935). Amtrak and CSX do not contend that Sears Contracting expressly or impliedly agreed to assume Sears Concrete's liabilities or that the incorporation of Sears Contracting was fraudulent. Rather, they maintain that exceptions (2) and (3) apply to impose a successor liability on Sears Contracting, *i.e.,* that a "de facto merger" occurred between Sears Concrete and Sears Contracting or that Sears Contracting is a "mere continuation" of Sears Concrete.

**1.  *De Facto Merger***

■ Although the Supreme Court of Virginia has not squarely addressed the concept of *de facto* merger in the area of successor liability, Virginia likely would adopt the traditional view of the *de facto* merger exception. *See Harris,* 243 Va. at 69–72, 413 S.E.2d at 609–10 (adhering to traditional "mere continuation" doctrine and expressly rejecting expansive reading of this exception in the product liability context). The elements of a *de facto* merger under the traditional view are: (1) a continuity of the selling corporation's enterprise, including continuity of management, personnel, physical location, assets, and general business operations; (2) a continuity of ownership because the purchasing corporation acquires the assets with shares of its own stock, which ultimately are held by the selling corporation's shareholders; (3) prompt liquidation and dissolution of the selling corporation's business operations; and (4) an assumption by the purchasing corporation of the selling corporation's obligations necessary for normal operation of the seller's business. *See, e.g., Bud Antle,* 758 F.2d at 1457–58; *Crawford Harbor,* 661 F.Supp. at 884. The key element of a *de facto* merger is, however, a continuity of ownership corporations. *See, e.g., Leannais,* 565 F.2d at 439–40; *Travis,* 565 F.2d at 447 ("Absent a transfer of stock, the nature and consequences of a transaction are not those of a merger."); *Crawford Harbor,* 661 F.Supp. at 884 (" 'The essential characteristic of a *de facto* merger is the succession of the selling corporation's stockholders to stockholder status in the purchasing corporation.' ") (citation omitted).

■ In this action, it is undisputed that, although a transfer of both machinery and personnel did occur, there was no sale or transfer of the stock of Sears Concrete to Sears Contracting. Accordingly, the court holds that the circumstances surrounding the creation and incorporation of Sears Contracting do not warrant a finding of a *de facto* merger under Virginia law.

### 2. Mere Continuation

■ Virginia adheres to the traditional view of what constitutes a "mere continuation" for purposes of imposing successor liability. *Harris v. T.I., Inc.,* 243 Va. at 69–72, 413 S.E.2d at 609–610. In determining whether one corporation is the "mere continuation" of another under traditional doctrine, the essential inquiry is whether there has been a continuation of the corporate entity of the seller, not whether there has been a continuation of the seller's business operations. *See, e.g., Bud Antle,* 758 F.2d at 1458; *Travis,* 565 F.2d at 447; *Crawford Harbor,* 661 F.Supp. at 885; *Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 98 (Minn.1989). As the Supreme Court of Virginia has recently observed, the "key element" of this inquiry is whether there is "[a] common identity of the officers, directors, and stockholders in the selling and purchasing corporations." *Harris,* 243 Va. at 70, 413 S.E.2d at 609; *see also Pepper,* 165 Va. at 190, 181 S.E. at 410 (finding continuation based principally on identity of ownership and management); *Bud Antle,* 758 F.2d at 1459; *Leannais,* 565 F.2d at 440. Among these three required factors (officers, directors, and stockholders), it appears that identity of ownership is the most important component to sustain a finding of "mere continuation." *See, e.g., Weaver v. Nash Int'l Inc.,* 730 F.2d 547, 548 (8th Cir.1984); *Emerson Elec. Co. v. Rego Corp.,* 1991 WL 36954 at *6, 1991 U.S.Dist. Lexis 3140 at *16–*17 (N.D.Ill. March 13, 1991).

■ Another element of the traditional "mere continuation" analysis is whether, fol-

lowing the transaction, there exists one corporation. *See, e.g., Travis,* 565 F.2d at 440; *Diaz v. South Bend Lathe Inc.,* 707 F.Supp. 97, 100 (E.D.N.Y.1989); *Lopata v. Bemis Co.,* 406 F.Supp. 521, 526 (E.D.Pa.1975), *aff'd,* 546 F.2d 417 (3d Cir.1976); *see generally,* Timothy J. Murphy, *A Policy Analysis of A Successor Corporation's Liability For Its Predecessor's Defective Products When The Successor Has Acquired The Predecessor's Assets For Cash,* 71 Marq.L.Rev. 815 (1988).

Considering the legal principles applicable under Virginia law and examining the record in this action, the court concludes that Sears Contracting is the mere continuation of Sears Concrete. First, the most important requirement—identity of ownership between Sears Concrete and Sears Contracting—is satisfied. It is undisputed that Robert J. Sears and Randy Sears are the sole stockholders of both Sears Concrete and Sears Contracting. Moreover, Sears Concrete and Sears Contracting have identical officers and directors: Robert and Randy Sears. Second, the record shows that Sears Contracting voluntarily assumed the corporate identity of Sears Concrete in its capacity as debtor by taking over the payment obligations on Sears Concrete's equipment and in its capacity as employer by continuing to employ the employees of Sears Concrete without any hiatus in their employment. Third, Sears Contracting evinced continuity of the Sears Concrete corporate entity by using the same offices, address, and telephone number as Sears Concrete, as well as using delivery tags which bore the name and old telephone number of Sears Concrete for months after Sears Contracting was incorporated.

■ This conclusion is not altered by the fact that Sears Concrete continued to exist following the incorporation of Sears Contracting. The Virginia decisions reflect that the existence vel non of a single corporation is a factor in the mere continuation equation, but it is only one of several factors.[1] Thus,

---

1. One case, *Diaz v. South Bend Lathe Inc.,* suggests that in order to find one corporation is the mere continuation of another, it is a requirement that only one corporation exist following the transaction. 707 F.Supp. 97, 100 (E.D.N.Y. 1989). No Virginia court, however, has taken

this position. Furthermore, this court is confident that under the facts of this case, where Sears Concrete is simply a "shell corporation" which has done no business since the creation of its successor and which, according to one of the owners of both corporations, retains its existence

where all other evidence points to continuity, the single remaining corporation factor does not preclude a finding of mere continuation. That is particularly true where, as here, other undisputed evidence shows that the predecessor corporation is a legal entity in name only. Sears Concrete has done no business since the creation of its successor, Sears Contracting. Robert J. Sears, an executive, director and principal shareholder in both corporations, testified in deposition that the present litigation provides the principal justification for the continued existence of Sears Concrete. Further, the financial and tax consultant to both corporations considers them to be the same entity, differing in name only. On this record, the court finds that the mere fact that Sears Concrete continued to exist after transferring its assets, employees, and goodwill to Sears Contracting does not preclude a finding that Sears Contracting is the mere continuation of Sears Concrete.

### CONCLUSION

For the foregoing reasons, the motion of Amtrak and CSX for partial summary judgment is granted.

It is so ORDERED.

solely because of this litigation, that the "one corporation" factor should not be read as a requirement, but rather as a single factor in the analysis.