**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-2557

RICHARD C. FUISZ, Dr.; LORRAINE FUISZ,

Plaintiffs - Appellees,

versus

WALTER E. LYNCH, AIA, PLLC,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Chief District Judge. (CA-04-200)

Argued: May 25, 2005                    Decided: July 20, 2005

Before WILKINS, Chief Judge, and TRAXLER and KING, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Frank Douglas Ross, III, ODIN, FELDMAN & PITTLEMAN, P.C., Fairfax, Virginia, for Appellant. Kathy Cuffage Potter, ALBO & ORLON, L.L.P., Arlington, Virginia, for Appellees. **ON BRIEF:** Seth C. Berenzweig, ALBO & ORLON, L.L.P., Arlington, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Appellant Walter E. Lynch, AIA, PLLC (the "Lynch PLLC") challenges the district court's declaration that it is liable for a judgment secured by Dr. Richard C. and Lorraine Fuisz (the "Fuiszes"), in Virginia state court. The underlying judgment was rendered in 2003 against the Lynch PLLC's predecessor entities — Walter E. Lynch & Company, Inc. ("WELCO"), Group Design Associates, Inc. ("GDA"), and Design Foundry, Inc. ("DF") — and against Walter E. Lynch individually. After conducting a bench trial in October 2004, the district court ruled that the Lynch PLLC is liable to the Fuiszes as the successor in interest to WELCO, GDA, and DF. Fuisz v. Walter E. Lynch, AIA, PLLC, No. CA-04-200 (E.D. Va. Nov. 29, 2004) (the "Verdict").[1] As explained below, we affirm.

I.

At all times material to this dispute, Walter E. Lynch was the sole owner of WELCO, GDA, and DF (collectively, the "Lynch Defendants"), which conducted business as architectural design and construction management firms.[2] In 1999, the Fuiszes contracted

_____

[1]The Verdict is comprised of the district court's Order of November 29, 2004, and its separate "Findings of Fact" and "Conclusions of Law" of that date. The state court's judgment against Lynch individually is not relevant in this proceeding.

[2]As a general proposition, the facts recited in this opinion are drawn from the Verdict.

2

with the Lynch Defendants for construction of a private dwelling, at a total price of approximately $3 million. When those entities constructed only part of the dwelling (valued at approximately $100,000), the Fuiszes initiated suit against them, and against Lynch individually, in the Circuit Court for the County of Fairfax. In disposing of the Fairfax County lawsuit, the state court awarded judgment to the Fuiszes, in the sum of $3,161,000, plus costs, against the Lynch Defendants. The court also "pierced the corporate veil" and awarded judgment against Lynch individually. Fuisz v. Walter E. Lynch & Co., No. 196146 (Va. Cir. Ct. Apr. 3, 2003) (the "Judgment").

In November 2002, prior to the Lynch PLLC being created, Lynch entered into negotiations with the Maryland Jockey Club (the "Jockey Club") and its parent company, Magna Entertainment, to provide architectural and design services for work at the Laurel and Pimlico Racetracks in Maryland (the "Racetracks Project"). According to Joseph A. DeFrancis of the Jockey Club, he contacted Lynch concerning the Racetracks Project because he wanted to hire Lynch "personally." WELCO and GDA ceased conducting business soon thereafter in late 2002 or early 2003. In January 2003, while DeFrancis and Lynch were evaluating the feasibility of Lynch undertaking the Project, the Lynch PLLC billed the Jockey Club for approximately 120 hours of professional services on the Project, performed by Lynch and two other employees of the PLLC in November

3

and December 2002. During that same month, the Lynch PLLC began making rental payments to Johanna, LLC (in which Lynch has a fifty percent ownership interest), for office space at 1058 Thomas Jefferson Street, where the Lynch Defendants had their principal places of business. The Lynch PLLC obtained a Certificate of Organization in the District of Columbia on February 7, 2003, after it had rented office space and completed its initial work for the Jockey Club. In a series of transactions in late August and early September 2003, GDA sold its office equipment, earlier appraised at a value of approximately $5,000, to the Lynch PLLC for $65,500.

Like WELCO, GDA, and DF, the Lynch PLLC is solely owned by Lynch and conducts business as an architectural design and construction management firm. The Lynch PLLC has the same four employees, including Lynch, as did WELCO and GDA. Over fifty percent of the Lynch PLLC's clients are former WELCO and GDA clients.

On April 3, 2003, the Judgment was rendered in the Circuit Court. Thereafter, apparently unable to collect the Judgment, the Fuiszes filed this diversity proceeding in the Eastern District of Virginia, seeking, inter alia, a declaration that the Lynch PLLC is the successor in interest to WELCO and GDA and is thus liable for the Judgment. Although the Fuiszes asserted that the Lynch PLLC is the successor in interest to WELCO and GDA only, the Verdict found the Lynch PLLC to be the successor in

4

interest to the Lynch Defendants, including DF, and that the Lynch PLLC is liable for the Judgment, as well as interest and costs. The Lynch PLLC has timely appealed, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review for clear error the findings of fact made by a district court after a bench trial. Yarmouth Sea Prods., Ltd. v. Scully, 131 F.3d 389, 392 (4th Cir. 1997). Under this standard, we must accept a trial court's findings of fact unless, upon review, we are "left with the definite and firm conviction that a mistake has been committed." Id. (internal quotation marks omitted). On the other hand, we review de novo a trial court's legal rulings. Kaiser Found. Health Plan of the Mid-Atl. States v. Clary & Moore, P.C., 123 F.3d 201, 204 (4th Cir. 1997).

III.

A.

The sole contention raised by the Lynch PLLC on appeal is that the district court erred in ruling that, under Virginia law, it is the successor in interest to the Lynch Defendants, and thus liable for the Judgment.[3]  In Virginia, a corporation that

---

[3]The parties agree that Virginia law applies in this proceeding. See Seabulk Offshore, Ltd. v. Am. Home Assurance Co., 377 F.3d 408, 418 (4th Cir. 2004) (citing Erie v. Tomkins, 304 U.S.

"purchases or otherwise receives the assets of another company is generally not liable for the debts and liabilities" of the predecessor. <u>Kaiser Found. Health Plan of the Mid-Atl. States v. Clary & Moore, P.C.</u>, 123 F.3d 201, 204 (4th Cir. 1997) (applying Virginia law). The Supreme Court of Virginia has enumerated four limited situations, however, where a successor corporation may be so liable. Those exceptions arise: (1) when the successor corporation has expressly or impliedly agreed to assume the liabilities of its predecessor; (2) when the circumstances warrant a finding that a consolidation or de facto merger of the two corporations occurred; (3) when the successor corporation is merely a continuation of its predecessor (the "mere continuation exception"); or (4) when the disputed transaction is fraudulent in fact. <u>Harris v. T.I., Inc.</u>, 413 S.E.2d 605, 609 (Va. 1992).[4] In this dispute, only the mere continuation exception is relevant. In that regard, the Lynch PLLC maintains that the district court

64, 78 (1938)).

[4]Although the Lynch PLLC is a professional limited liability company created in the District of Columbia, the principles enunciated by the Virginia courts governing successor liability in a corporate setting are applicable to it. <u>See</u> <u>Graham v. James</u>, 144 F.3d 229, 240 (2d Cir. 1998) ("'The traditional rule of corporate successor liability and the exceptions to the rule are generally applied regardless of whether the predecessor or successor organization was a corporation or some other form of business organization.'") (quoting 63 Am. Jur. 2d <u>Products Liability</u> § 117 (1984)).

erroneously concluded that it is a mere continuation of the Lynch Defendants, and as such, liable for the Judgment.

Several factors have been identified for assessing whether a business entity constitutes a mere continuation of a predecessor entity. The key element for such an assessment, according to the Supreme Court of Virginia, is the "common identity of the officers, directors, and stockholders" in the successor and predecessor corporations. Harris, 413 S.E.2d at 609. Also relevant is whether a successor entity "continues in the same business as its predecessor," although this factor is less important than identity of ownership. Clary & Moore, 123 F.3d at 205. Other factors identified as pertinent to such an assessment include "whether two corporations or only one remain," and whether the successor continues to operate at the same location with the same telephone number as its predecessor. Id. Additionally, when a predecessor entity's assets are transferred for less than adequate consideration, the successor is "likely to be a mere continuation." Id. Finally, notwithstanding these factors, Virginia law provides that the mere continuation exception does not apply when the "purchase of all the assets of a corporation is a bona fide, arm's-length transaction." Harris, 413 S.E.2d at 609; see also Beck v. Va. Sash & Door, Inc., No. LL-1404, 2001 WL 1486159, at *4 (Va. Cir. Ct. 2001).

7

B.

Our assessment of the foregoing factors compels the conclusion that the district court did not err in ruling that the mere continuation exception applies here. First and foremost, the ownership of the Lynch PLLC, WELCO, GDA, and DF was identical. As the district court found, Lynch was the sole owner of WELCO, GDA, and DF, and he is now the sole owner of the Lynch PLLC. Verdict at 1. WELCO, GDA, and the Lynch PLLC also had the same four employees. Id. at 3. And, as the Supreme Court of Virginia has emphasized, an identity and commonality of officers, directors, and stockholders in successor and predecessor entities is the "key element" for determining successor liability. Harris, 413 S.E.2d at 609.

Second, as the district court found, the Lynch PLLC continued to operate the same business — architectural design and construction management — as the Lynch Defendants. Verdict at 2-3. Indeed, the negotiations with the Jockey Club on the Racetracks Project demonstrate the alignment of business objectives of the Lynch PLLC and the Lynch Defendants. According to DeFrancis, he contacted Lynch on the Project because he wanted to hire Lynch "personally," because of Lynch's prior work on similar projects. DeFrancis was not aware of which business entity employed Lynch,

8

nor did he know that the services Lynch had performed on similar projects were accomplished while he was with the Lynch Defendants. The specific business entity that Lynch represented was not important to DeFrancis, and that fact — coupled with the other factual underpinnings of the Verdict — establish that the Lynch PLLC and the Lynch Defendants were in the same business.

Two additional factors also weigh in favor of the trial court's conclusion that the Lynch PLLC is a mere continuation of the Lynch Defendants. First, neither WELCO nor GDA presently exist, having ceased conducting business in late 2002 or early 2003, contemporaneous with the formation and initiation of the Lynch PLLC as Lynch's operative business entity. Second, it is significant that the Lynch PLLC has continued to operate from the predecessor entities' former offices, using the same telephone number. See Verdict at 6-7.

Finally, we are comfortable in concluding that, even if the Lynch PLLC paid adequate consideration for the assets it received from the Lynch Defendants, the asset transfer was not a bona fide, arm's-length transaction.[5] The Lynch PLLC contends, of

---

[5]Although we agree that the asset transfer did not constitute a bona fide, arm's-length transaction, our reasoning in affirming the trial court's ruling does not fully adhere to the approach utilized by it. See United States v. Smith, 395 F.3d 516, 519 (4th Cir. 2005) (observing that appellate court is "not limited to evaluation of the grounds offered by the district court to support its decision, but may affirm on any grounds apparent from the record").

course, that it paid adequately for those assets and that, as a result, the transfer from GDA constituted a bona fide, arm's-length transaction. Contrary to this contention, in assessing whether the mere continuation exception applies, we are obliged to conduct separate assessments of, on one hand, whether adequate consideration was paid in an asset transfer and, on the other, whether the transfer constituted a bona fide, arm's-length transaction. See Beck, 2001 WL 1486159, at *4 (conducting separate assessments).[6] Even assuming that adequate consideration was paid by the Lynch PLLC for the equipment it obtained from GDA, the transfer was plainly not conducted as if the Lynch PLLC and GDA were strangers. First, the Lynch PLLC substantially overpaid for the equipment — paying, according to the trial court, $65,500 to GDA for equipment appraised at approximately $5,000 — an arrangement which would not have occurred had the entities been unrelated. See Verdict at 5.[7] Second, there is no indication in the record or in the Verdict that GDA sought other prospective purchasers for its equipment, or that it sold any of its assets to

---

[6]An "arm's length transaction" is a "transaction between two parties, however closely related they may be, conducted as if the parties were strangers, so that no conflict of interest arises." Black's Law Dictionary 1535 (8th ed. 2004).

[7]In explaining to the trial court why the Lynch PLLC paid more to GDA for the equipment than its appraisal value, Lynch testified that the PLLC paid the "replacement value" of the equipment, wanting to err on the side of paying too much.

10

another purchaser.  See Clary & Moore, 123 F.3d at 208 (concluding that sale of all items to one firm favored conclusion that transfer was not bona fide, arm's-length transaction); Beck, 2001 WL 1486159, at *4 (concluding that asset purchase was not bona fide, arm's-length transaction where foreclosure sale resulted in only one bid).  And the fact that the asset transfer occurred only six months after the Judgment was rendered is a compelling indication that the Lynch PLLC was being used for the purpose of avoiding the predecessor entities' liability on the Judgment.  See Clary & Moore, 123 F.3d at 208 (weighing factors pertinent to assessment of successor liability and concluding that new firm was created with "the express purpose of avoiding" predecessor's debt).

In sum, our assessment of the relevant factors on the mere continuation exception, in the context of this record and the applicable authorities, compellingly demonstrates that the Lynch PLLC is a mere continuation of the Lynch Defendants.  And, in these circumstances, the trial court did not err in so ruling.[8]

IV.

---

[8]Although the Judgment was entered against the Lynch Defendants, the Fuiszes sought a declaration, in the court below, that the Lynch PLLC is the successor in interest to only two of those entities — WELCO and GDA.  On appeal, the Fuiszes urge affirmance of the court's ruling that the Lynch PLLC is the successor in interest to all three Lynch Defendants.  In this regard, the Verdict was amply supported by the evidence and the district court did not err.

11

Pursuant to the foregoing, we affirm the Verdict of the district court.

AFFIRMED