# CIRCUIT COURT OF FAIRFAX COUNTY

Augusta Lumber Company, Inc.

v.

Broad Run Holdings, L.L.C., et al.

August 2, 2006

Case No. (Law) 2006-3341

BY JUDGE R. TERRENCE NEY

This matter came before the Court on July 24, 2006, on Plaintiff's Motion to Compel Arbitration. The Court has carefully reviewed the pleadings, the briefs and arguments of counsel, the testimony of the witnesses, and each of the exhibits entered into evidence. The Court now issues its ruling in the matter.

*Facts*

The facts of this case are for the most part not in dispute. Plaintiff, Augusta Lumber Company, Inc. ("Augusta"), entered into a Timber Sale Agreement ("TSA") with Defendants Broad Run Holdings, L.L.C. ("Broad Run") and Greenvest, L.C. ("Greenvest")[1] on August 6, 2003. The TSA is so dated but was not actually signed until August 19, 2003. Trial Ex. 1. Pursuant to the TSA, Augusta acquired the timber rights to 325 acres of a larger property in Loudoun County. In exchange, Augusta made an initial payment of $85,000 to Greenvest, leaving the balance of the contract price of $253,867

---

[1] Broad Run was known as Broad Run Village, L.C., at the time the TSA was concluded. Broad Run Village, L.C., entered into the TSA through its agent, Greenvest.

to be paid before any trees were harvested. Under the TSA, Augusta had until February 6, 2005, to cut and remove the timber it had purchased, which it had marked with blue paint. The TSA provided for arbitration in case of a dispute between the parties.

On September 15, 2004, Defendant Broad Run, acting through its agent, Defendant Greenvest, agreed to extend the deadline for harvesting the timber to February 6, 2007. On December 1, 2005, Defendant Broad Run conveyed its Loudoun property to Defendant Madison at Broad Run Village, L.L.C. ("Madison") in exchange for a one hundred percent interest in Madison. Defendants Greenvest, Broad Run, and Madison are all commonly owned and controlled. On December 1, 2005, Defendant Walker Title & Escrow Co., Inc. ("Walker Title") acquired legal title to the land under a deed of trust, securing repayment of a $125 million loan made by iStar Financial, Inc. ("iStar") to Madison. Neither Defendant Walker Title nor Defendant Madison was party to the TSA.

In early January of 2006, Augusta contacted Defendants Greenvest, Broad Run, and Madison to inform them that it planned to begin harvesting the timber. Defendants denied that they had entered into the TSA and threatened Augusta with prosecution if it attempted to harvest the timber. A short time later, Augusta received a letter from Defendants claiming that the TSA had expired. Augusta then notified Defendants of its intention to refer the dispute to arbitration in accordance with the TSA. On April 7, 2006, Augusta filed its Complaint to Compel Arbitration. Defendants Broad Run and Greenvest no longer dispute that they have an agreement to arbitrate. Only Defendants Madison and Walker Title object to arbitration.

*Applicable Law*

The parties disagree as to whether state or federal law applies to the TSA. Plaintiff Augusta contends that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16 (2006), and federal case law apply because the timber at issue will undoubtedly enter interstate commerce. Defendants counter that the Virginia Uniform Arbitration Act ("VUAA"), Va. Code Ann. § 8.01-581, et seq. (2006), and Virginia case law apply because the timber is located in Virginia, the TSA was concluded in Virginia, and the parties are Virginia residents.

The distinction between the FAA and the VUAA, according to both parties, is significant to the question of whether a party that has not signed an arbitration agreement may nonetheless be compelled to arbitrate. The general rule is that a party that has not entered into an arbitration agreement cannot be

so compelled, but federal case law recognizes a number of theories for binding a non-signatory to an arbitration agreement. *International Paper Co. v. Schwabedissen Maschinen & Anlagen, G.m.b.H.*, 206 F.3d 411, 416-18 (4th Cir. 2000). Virginia, on the other hand, has no case law recognizing such exceptions to the general rule. As non-signatories to the TSA, Madison and Walker Title assert that they cannot be compelled to arbitrate under Virginia law.

The Court holds that regardless of whether the FAA or VUAA applies to this particular case under principles of interstate commerce, federal case law applies because the language of both Acts is identical. When the Virginia legislature adopts the provisions of a federal statute, the legislature is presumed to have adopted the construction that the federal courts have placed upon that statute. *General Accident, Fire & Life Assurance Corp. v. Cohen*, 203 Va. 810, 813, 127 S.E.2d 399, 401 (1962). Accordingly, any theories that would bind Madison and Walker Title to the TSA under the FAA bind them under the VUAA as well.

One such theory urged by Augusta is that of *de facto* merger. Although the common law rule is that a corporation that purchases the business assets of another does not assume the other's liabilities, the purchasing corporation may still be found liable if the purchase constitutes a *de facto* merger. *Golub v. Kidder, Peabody & Co.*, No. 89-5903, 2000 U.S. Dist. LEXIS 10268 at **10-11 (S.D. N.Y. July 24, 2000). Generally, courts look for four factors to determine whether a *de facto* merger has occurred: (1) continuity of enterprise; (2) continuity of shareholders; (3) cessation of operations by seller; and (4) assumption of the obligations necessary to uninterrupted continuation of normal business operations by the seller. *Bud Antle, Inc. v. Eastern Foods, Inc.*, 758 F.2d 1451, 1458 (11th Cir. 1985); *Blizzard v. National R.R. Passenger Corp.*, 831 F. Supp. 544, 547 (E.D. Va. 1993).

*Madison*

Augusta argues that the exchange of Broad Run's Loudoun property for a one hundred percent interest in Madison has all the characteristics of a *de facto* merger. First, Augusta states that the management, personnel, physical location, assets, and general business of Madison and Broad Run are identical. Both Madison and Broad Run use Greenvest as their development manager, and both are involved in the subdivision, development, and sale of the same real property. Second, Madison and Broad Run have the same ownership. Third, although Broad Run continues to exist in name, it has ceased operations and functions exclusively as a holding company or pass-through entity for

Madison. Fourth, Madison has assumed all the liabilities necessary for the uninterrupted continuation of real estate development on the Loudoun property. Thus, Augusta concludes, a *de facto* merger between Madison and Broad Run has occurred, and this Court should compel Madison to arbitrate pursuant to the TSA that Broad Run signed.

The Court agrees with Augusta and holds that, under the facts established at trial, Madison and Broad Run share an identity of interests and have undergone a *de facto* merger for purposes of determining whether Madison may be compelled to arbitrate under Broad Run's prior agreement to do so.[2] The Court will, therefore, grant Plaintiff's Motion to Compel Arbitration with respect to Defendant Madison. Augusta had argued, as an alternative ground for compelling arbitration, that Broad Run's transfer of assets to Madison constituted a fraudulent conveyance designed to evade Broad Run's obligations under the TSA. Because the Court finds that a *de facto* merger occurred between Broad Run and Madison, the Court need not address this issue.

### *Walker Title*

Walker Title was named as a party to this suit for the sole reason that it holds legal title to the Loudoun property under a deed of trust securing repayment of a loan that iStar made to Madison. Madison, meanwhile, holds equitable title. As only equitable title holders to the land are subject to the provisions of the TSA, Walker Title is not a necessary party to this suit and is, therefore, dismissed from the case.

### *Motion to Stay Arbitration*

Defendants have filed a Motion to Stay Arbitration in the event Plaintiff's Motion to Compel Arbitration is granted. Defendants' Motion is denied, as the Court does not find good cause to stay arbitration. Whether

---

[2] The Court also finds it telling that in deposition testimony, Mr. Abdul-Baki, the corporate designee of Madison, testified that at the time that Broad Run conveyed the Loudoun property to Madison, neither side gave any thought to the TSA. Dep. of Ahmad H. Abdul-Baki, Trial Ex. 36, at 25-26. Mr. Abdul-Baki further testified that the only reason that Broad Run's obligations under the TSA were not explicitly transferred to Madison was that Madison was unaware that the TSA was still in effect. *Id.* at 57.

Defendants can appeal the Court's ruling on an expedited basis or not, the arbitration proceedings will take time, and Defendants will most likely have sufficient time to appeal while the proceedings move forward.

### Extension of Time to Harvest the Timber

Finally, the TSA provides for an extension of the time that Plaintiff has to harvest the timber in the event such harvest is delayed by arbitration. *Timber Sale Agreement*, Sec. I, Trial Ex. 1. The Court finds that this provision is controlling. Therefore, the commencement of arbitration proceedings as defined in the TSA will extend the deadline beyond February 6, 2007, in the event such extension is necessary, until the arbitration proceedings are concluded.

### Conclusion

In sum, although Broad Run and not Madison signed the TSA, Madison can be compelled to arbitrate its dispute with Augusta under the principle of *de facto* merger, and Plaintiff's Motion to Compel Arbitration is, therefore, granted with respect to Madison. Walker Title, the mere legal title holder to the land at issue, is not a necessary party to this suit and is dismissed from the case. And finally, Defendant's Motion to Stay Arbitration is denied.